F & H INVESTMENT COMPANY, INC.,
a Minnesota corporation, Appellee and
Cross-appellant,

v.

SACKMAN–GILLILAND CORPORA-
TION, a New York corporation,
Appellant and Cross-appellee.

Nos. 83–1707, 83–1711.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 13, 1983.

Decided Feb. 24, 1984.

Fred Allen & Associates, Ltd. by Fred Allen, Edina, Minn., for appellant/cross-appellee.

. Dorsey & Whitney by Michael Pysno, Robert Bayer, Minneapolis, Minn., for appellee/cross-appellant.

Before HEANEY and FAGG, Circuit Judges, and HANSON,* Senior District Judge.

HANSON, Senior District Judge.

The action below was brought by F & H Investment Company, Inc. (plaintiff) against one of its lenders, Sackman-Gilliland Corporation (defendant). Plaintiff sued defendant on various theories, but only two are relevant to this appeal: breach of fiduciary duty and fraudulent misrepresentation. A jury returned verdicts for plaintiff on both breach of fiduciary duty and fraudulent misrepresentation. The court granted defendant judgment notwithstanding the verdict on the breach of fiduciary duty claim but denied defendant's motion

---

* The Honorable William C. Hanson, United States Senior District Judge for the Northern and Southern Districts of Iowa, sitting by designation.

for judgment notwithstanding the verdict or new trial on the fraudulent misrepresentation claim. Judgment was entered for plaintiff on the fraudulent misrepresentation claim. During and after the trial, the court denied plaintiff's motions for prejudgment interest and its motions to submit the issue of punitive damages to the jury. Defendant appeals and plaintiff cross-appeals. We reverse the denial of a new trial on the fraudulent misrepresentation claim and remand for a new trial on that claim.

## I. FACTS

The events relevant to this case began when plaintiff was seeking financing for an apartment project. Plaintiff got a permanent mortgage commitment of $875,000 from Anchor Savings Bank of New York (Anchor). This commitment contained various requirements on plaintiff, including that the full amount would be loaned only if plaintiff rented a certain number of units at a certain rent. The nature of Anchor's commitment is disputed. Defendant argues it was a contract which plaintiff would breach if it did not meet the various requirements and close the deal. Plaintiff argues it was merely an option in plaintiff to acquire financing from Anchor with certain conditions that plaintiff was required to meet before it could exercise its option. Plaintiff also got an $800,000 construction loan from defendant.

After this financing was in place there was a meeting between plaintiff and defendant. Exactly what occurred at this meeting is disputed. Plaintiff claims defendant promised to provide permanent financing at lower rates than Anchor if plaintiff did not deal with Anchor. Defendant claims this "promise" was only a "suggestion." At any rate, defendant apparently told plaintiff that plaintiff could avoid its commitment with Anchor by failing to meet the rental requirement for the full loan and by taking other action that would cause Anchor to cancel its commitment. Plaintiff apparently agreed to defendant's suggestion (or accepted its promise).

Plaintiff had continual problems financing its apartment project. These problems were due, at least in part, to the fact that Anchor did cancel its commitment after plaintiff failed to meet the rental requirement for the full loan. Further, plaintiff never got permanent financing from defendant.

On January 1, 1973, while plaintiff was attempting to obtain more financing, defendant told plaintiff it had "all the time in the world" to obtain more financing before defendant would foreclose on its construction loan. When asked how long "all the time in the world" was, defendant said, "sixty days-ninety days." Two days after defendant's "all the time in the world" statement, defendant gave notice of foreclosure. Foreclosure was made sixty-three days after defendant's "all the time in the world" statement, on March 30, 1973.

## II. BREACH OF FIDUCIARY DUTY

■ The jury returned a verdict for plaintiff on its breach of fiduciary duty claim. However, the court granted defendant judgment notwithstanding the verdict on this claim, finding no evidence of a fiduciary relationship between plaintiff and defendant. Plaintiff argues at one point in its brief to this court that there was sufficient evidence of a fiduciary relationship between plaintiff and defendant.

■ We hold that this issue has not been preserved for appeal. Plaintiff's notice of appeal is limited to the court's denial of punitive damages and prejudgment interest. We recognize that a defect in a notice of appeal is not fatal if it is harmless, but this is not such a case. A reasonable reading of plaintiff's notice of appeal does not include the grant of judgment notwithstanding the verdict on the breach of fiduciary duty claim. Further, the statement of issues and the preliminary statement in plaintiff's brief do not include the grant of judgment notwithstanding the verdict on the breach of fiduciary duty claim. The procedural history in plaintiff's brief refers to "plaintiff's cross appeal on the issue of damages only." Finally, plaintiff's argu-

ment that there was evidence of a fiduciary relationship is made as an argument for upholding the judgment for plaintiff on the fraudulent misrepresentation claim. Apparently relying on all the indications that plaintiff was not appealing the grant of judgment notwithstanding the verdict on the breach of fiduciary duty claim, defendant did not brief this issue. Nor was the issue discussed by either party at oral argument.

Due to plaintiff's notice of appeal and the other indications discussed above, this appeal was briefed and argued on the assumption that plaintiff did not appeal the grant of judgment notwithstanding the verdict on the breach of fiduciary duty claim. For this court to reach the issue would prejudice defendant. Therefore, we find that the issue has not been preserved for appeal. *See* Fed.R.App.P. 3(c), 9 Moore's Federal Practice ¶ 203.18 (2 ed. 1983).

## III. FRAUDULENT MISREPRESENTATION

### Plaintiff's Theory

Plaintiff claimed that defendant committed fraudulent misrepresentation through its statement that it would provide permanent financing if plaintiff did not deal with Anchor and through its statement that plaintiff had "all the time in the world" to obtain more financing. Plaintiff claimed that it relied on these statements in not meeting the rental requirement under the Anchor loan commitment, in taking other action to cause Anchor to cancel its commitment, and in not obtaining other financing. Finally, plaintiff claimed it was damaged when defendant foreclosed on its construction loan without providing permanent financing or giving plaintiff "all the time in the world" to get other financing.

### Procedural History

The trial was bifurcated into liability and damage phases. In finding defendant liable on the fraudulent misrepresentation claim, the jury found, by special verdict, that plaintiff's reliance on defendant's misrepresentation consisted in "breaking its

loan commitment with Anchor Savings Bank." At this point the court determined that the doctrine of *in pari delicto* barred any recovery for damages from plaintiff's loss of financing from Anchor. However, the court felt that the wording of the special verdict may have precluded the jury from finding other acts of reliance by plaintiff. Therefore, in the damage phase of the trial the jury was asked, by special verdict, whether plaintiff's reliance on defendant's misrepresentations consisted of any action other than the breaking of its loan commitment with Anchor. The jury answered in the negative. Since the court had held that *in pari delicto* barred any recovery for damages from plaintiff's loss of financing from Anchor, the jury was instructed that in determining damages it should ignore anything involving Anchor. Despite this instruction and its own finding that plaintiff's only reliance on defendant's misrepresentation consisted in breaking its loan commitment with Anchor, the jury found plaintiff entitled to $356,000 in damages. At this point the court reversed its prior decision on *in pari delicto,* holding now that plaintiff could recover damages for the loss of financing from Anchor. The court then entered judgment for plaintiff in the amount found by the jury.

### Inconsistent Verdicts

Given the court's instruction that the jury was to ignore anything involving Anchor in determining damages, the jury's award of damages is inconsistent with its finding that plaintiff's only reliance on defendant's misrepresentations was in breaking its loan commitment with Anchor. This inconsistency is irreconcilable and requires a new trial.

The court's reversal of its position on *in pari delicto* did not reconcile the jury's verdicts. In entering judgment in the amount found by the jury, the court apparently assumed that the amount found by the jury was based on plaintiff's loss of financing from Anchor. However, it is impossible to determine what was in the jury's mind. The jury's award might have been based on some damage to plaintiff not arising from

any reliance on any misrepresentation by defendant.

Even if it could be assumed that the jury's award was based on plaintiff's loss of financing from Anchor, the court still could not simply enter judgment in the amount found by the jury because the parties had not had any opportunity to present evidence or argument on damages for plaintiff's loss of financing from Anchor. The parties had not had any such opportunity because the court had taken the position, during the damage phase of the trial, that *in pari delicto* barred any recovery for damages from plaintiff's loss of financing from Anchor. Therefore, even assuming that the jury's award was based on plaintiff's loss of financing from Anchor and that such an award is not barred by *in pari delicto,* a new trial would still be required to give the parties an opportunity to present evidence and argument on damages for plaintiff's loss of financing from Anchor.

We hold that the court's failure to grant a new trial in these circumstances was an abuse of discretion.

*In Pari Delicto*

■ Under the doctrine of *in pari delicto,* one party cannot recover against another when both are equally at fault. Black's Law Dictionary 77 (5th ed. 1979). Defendant argued that *in pari delicto* barred any recovery for plaintiff's loss of financing from Anchor because defendant and plaintiff were equally at fault in breaking the Anchor loan commitment.

When the court ultimately held that *in pari delicto* did not apply, it did so on the ground that the doctrine applies to contract actions, where one party to an illegal contract attempts to recover from another under the illegal contract, but not to tort actions, where one wrongdoer attempts to recover from another under a tort theory for damages arising out of their mutual wrongdoing.

■ We hold that the court erred in concluding that *in pari delicto* does not apply to tort actions under Minnesota law. In *State v. AAMCO Automatic Transmissions, Inc.,*

293 Minn. 342, 199 N.W.2d 444 (1972), the Minnesota Supreme Court applied *in pari delicto* to bar an action for tortious destruction of a business. The Court stated that the doctrine is "applicable to tortious transactions based on fraud or similar intentional wrongdoing." 199 N.W.2d at 448. *Cf. Sorenson v. Safety Flate, Inc.,* 298 Minn. 353, 216 N.W.2d 859 (1974) (*in pari delicto* applied to bar indemnity between joint tort feasors).

Plaintiff has argued below and on appeal that *in pari delicto* is inapplicable because there is no wrongdoing by plaintiff on which the doctrine can be based. Plaintiff argues that there is no wrongdoing by it because the Anchor loan commitment was not a contract that it breached but only an option that it failed to exercise. Whether the Anchor commitment was a contract or only an option was never clearly determined below because the issue was rendered moot by the court's holding that *in pari delicto* is inapplicable in tort. This issue must be determined on retrial. If the Anchor commitment was only an option, then there is no wrongdoing by plaintiff and *in pari delicto* cannot apply.

*Sufficiency of the Evidence*

■ Defendant makes a strong argument that plaintiff presented insufficient evidence to support a verdict of fraudulent misrepresentation. First, defendant argues that the jury's finding that plaintiff's only reliance on defendant's misrepresentations was in breaking the Anchor loan commitment eliminates the "all the time in the world" statement as a basis of liability since that statement was made after the Anchor commitment was broken. As to defendant's "promise" of financing, defendant argues there was insufficient evidence that any promise was made, that defendant did not intend to keep any promise when it was made, that plaintiff relied on any promise to its detriment, or that plaintiff suffered damages proximately caused by any promise.

Our review of the record has raised serious doubts about the sufficiency of the evidence on fraudulent misrepresentation. If

there was insufficient evidence, the district court could have entered judgment notwithstanding the verdict and this court could now order judgment for defendant. However, due to the confused course of the trial, we believe that a new trial is more appropriate than a final judgment for defendant. Therefore, even if the evidence was insufficient, we would exercise our discretion to order a new trial rather than a judgment for defendant. *See generally,* 9 Wright & Miller, Federal Practice and Procedure: Civil § 2540 & p. 617 (1971).

*Prejudgment Interest and Punitive Damages*

■ On its cross-appeal, plaintiff argues that the court erred in denying it prejudgment interest and punitive damages. Plaintiff also argues in its brief to this court that it should have been allowed damages for "lost profits." This is apparently the first time plaintiff has used the term "lost profits." It seems that plaintiff uses the term "lost profits" as another name for prejudgment interest. If plaintiff means something by "lost profits" other than prejudgment interest, the issue has not been preserved for appeal.

At any rate, our remand for a new trial renders these issues moot. The propriety of prejudgment interest, damages for lost profits, and punitive damages will depend on the evidence adduced at the new trial. However, we note that we find no error in the court's denial of prejudgment interest and punitive damages under the evidence adduced below.

## IV. CONCLUSION

The denial of defendant's motion for a new trial on plaintiff's fraudulent misrepresentation claim is reversed and the case is remanded for a new trial on fraudulent misrepresentation.