Austin HAYDEN, James Hartzell, Lee Greenslit, Frank Johnson, Dwain Kasel, James Nordlie, James Maki, Michael H. Bitterman, Donald C. Severtson, Jeanne Stewart and Vernon D. Kotula, Appellees,

v.

Orison F. McDONALD, individually, Orison F. "Mack" McDonald, II, individually, d/b/a Ole Chaparral and McDonald Investments, Inc., a Texas corporation, Appellants.

Austin HAYDEN, James Hartzell, Lee Greenslit, Frank Johnson, Dwain Kasel, James Nordlie, James Maki, Michael H. Bitterman, Donald C. Severtson, Jeanne Stewart, Vernon D. Kotula, Donn Barber, Bernie Beaver, Lyle Bing, James Brown, L.T. Demeules, John Emmer, Don Erickson, Patrick Farley, Dennis Frandsen, Robert A. Godfrey, Karl Gramith, Howard Gruhlke, Cecil Herring, Lee Heutmaker, Vernice Heutmaker, Earl Heyerdahl, Sheldon Hoffman, Jim Hoversten, Delbert Kelzer, Robert Kepple, George Krienke, James Loosen, John McCormick, James McKevitt, Carol Mozzetti, James Munn, E.J. Pacheco, William Phelps, David Remes, James Reissner, Terry Ripley, Arnold Smith, D.P. Tschimperle, Gust Zahariades and Donald Zibell, Appellees,

v.

Orison F. McDONALD, individually, Orison F. "Mack" McDonald, II, individually, d/b/a Ole Chaparral, and McDonald Investments, Inc., a Texas corporation, Appellants.

John W. ADLER, Sally F. Adler, Carol Adler Zsolnay, Diane L. Adler, Lisa M. Adler, Leslie O. Frishman, Dean L. Greenberg, Henry Hanson, Harold L. Rutchick and Howard D. Stacker, Appellees,

v.

Orison F. McDONALD, individually, Orison F. "Mack" McDonald, II, individually, d/b/a Ole Chaparral and McDonald Investments, Inc., a Texas corporation, Appellants.

Harold L. RUTCHICK, Appellee,

v.

Orison McDONALD, II, also known as Mack McDonald, individually, and d/b/a Ole Chaparral and McDonald Investments, Inc., a Texas corporation, Appellants.

No. 84–5003.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 16, 1984.

Decided Aug. 28, 1984.

Lay, Chief Judge, filed concurring opinion.

Jay M. Vogelson, Moore & Peterson, Dallas, Tex., for appellants.

James M. Strother, Larkin, Hoffman, Daly & Lindgren, Ltd., Norman L. Newhall and Timothy H. Butler, Lindquist & Vennum, Minneapolis, Minn., for appellees.

Before LAY, Chief Judge, and HEANEY and ARNOLD, Circuit Judges.

HEANEY, Circuit Judge.

The defendants—Orison F. "Mack" McDonald, II (d/b/a Ole Chaparral), Orison F. McDonald, and McDonald Investments, Inc. —appeal from a district court order granting summary judgment in this state securities law action in favor of fifty-six individuals who purchased undivided working interests in various oil and gas leases from the defendants. The defendants assert, *inter alia,* that the district court erred in classifying these interests as securities under the Minnesota Blue Sky Act, Minn.Stat. Ann. §§ 80A.01–.31 (West Supp.1984), and in deciding that various affirmative defenses to the plaintiffs' action for rescission and restitution were unavailable as a matter of law. We agree with the district court that the undivided working interests were securities which should have been registered under Minnesota statutory law and that the alleged affirmative defenses other than *in pari delicto* do not bar summary judgment. We remand for the resolution of factual questions which remain regarding the defendants' *in pari delicto* defense; for determinations of which individual sales were not made within the applicable statute of limitations and jurisdictional provisions of the Minnesota Blue Sky Act; and for modification of the court's judgment to award restitution only to those plaintiffs who made purchases which may properly be rescinded at this stage of the proceedings.

## I. BACKGROUND

The plaintiffs initially filed four separate complaints in the United States District Court for the District of Minnesota, alleging numerous violations of both federal and state securities laws. In the main, they sought to rescind their purchases of undivided working interests in certain oil and gas leases from the defendants and a refund of their purchase monies. The district court consolidated the cases and bifurcated the issue of nonregistration under the Minnesota Blue Sky Act from the other claims in the complaints. The court's subsequent rulings on this state nonregistration issue are the subject of the present appeal.

On August 30, 1982, the court empaneled a jury to try the bifurcated claim of nonregistration under the Minnesota Blue Sky Act. Prior to beginning trial, however, the court considered several motions by the parties. In particular, it heard extensive

argument and testimony on the plaintiffs' motion for pretrial rulings that the undivided working interests were securities under Minnesota law and their motion to strike all evidence on the defendants' alleged affirmative defenses. Because the parties did not dispute that the defendants made numerous sales of undivided working interests in oil and gas leases located in Texas to each plaintiff and that none of these interests was ever registered as a security in Minnesota, the defendants would be liable for rescission and restitution under Minn.Stat. Ann. § 80A.23(1) (West Supp.1984) unless the interests were not securities or the defendants raised a proper defense to the action. The court ruled from the bench that the interests at issue were securities and that the defendants' alleged affirmative defenses—waiver, estoppel, ratification, and *in pari delicto* —were unavailable as a matter of law. It then dismissed the jury.

On October 14, 1982, the court held a further hearing to garner all proposed evidence in support of or in opposition to its earlier rulings; in effect, it sought to establish that there were no genuine issues of material fact concerning what amounted to a summary judgment for the plaintiffs on the state nonregistration issue. *See* Fed.R.Civ.P. 56. The court admitted two depositions of defendant Mack McDonald and allowed the defendants three-and-one-half weeks to submit a complete offer of proof on the evidence which would support any of their alleged affirmative defenses.

The defendants submitted their offer on November 10, 1982, and supplemented it on November 23, 1982. The district court reviewed the pleadings, depositions, exhibits, and offers of proof, and on December 14, 1982, issued a memorandum and order reaffirming its prior rulings. *Hayden v. McDonald,* Civil Nos. 4–80–620, 4–81–194, 4–81–468 & 4–81–195 (D.Minn. December 14, 1982). It held as a matter of law that the

interests were securities as defined in Minn.Stat.Ann. § 80A.14(18) (West Supp. 1984). It also held that the affirmative defense of waiver was unavailable in this securities action by virtue of section 80A.23(10) of the Minnesota Blue Sky Act, *id.* § 80A.23(10); that, assuming estoppel were a proper affirmative defense to a securities violation, the defendants failed to allege or offer proof sufficient to sustain an estoppel defense as a matter of law; and that four plaintiffs who found new buyers for the defendants—Tschimperle, Heutmaker, Maki, and Zibell [1]—were not so culpable as to be held *in pari delicto* with the defendants as a matter of law.

The court went on to find all defendants liable for the nonregistration and to adopt an "integration" theory to bring all sales to the plaintiffs within the statute of limitations and the jurisdictional reach of the blue sky laws. It then awarded restitution, interest, attorneys' fees, and costs to the plaintiffs totaling $3,270,292.78. On December 20, 1982, the court amended its order to reflect that the affirmative defense of ratification, as asserted by the defendants in their pretrial request for jury instructions, was no more than another label for the waiver defense which was statutorily abrogated under the Minnesota Blue Sky Act.

The defendants immediately appealed from the December 14 and December 20, 1982, orders, asserting (1) that genuine issues of material fact remained regarding the "securities" label placed on the interests at issue and regarding their affirmative defenses, (2) that the district court committed several errors in construing Minnesota law, (3) that some plaintiffs raised nonregistration claims barred by the statute of limitations or the jurisdictional provisions of the Minnesota Blue Sky Act, (4) that Orison F. McDonald was not liable for the acts of McDonald Investments, and

---

1. On appeal, the defendants add plaintiff Beaver to this list of plaintiffs who were allegedly *in pari delicto* in these transactions. In this opinion, we remand for further proceedings regarding the *in pari delicto* issue. The defendants are free on remand to amend their pleadings and motions below to assert this equitable defense against Beaver or any other plaintiff whose actions met the requirements of the defense.

(5) that the court erred in refusing to reduce the award to reflect the past tax benefits received by the plaintiffs as a result of their purchase of the undivided working interests. After full briefing and oral argument on the merits, we held that the district court's certification of its decision on nonregistration as a final judgment under Fed.R.Civ.P. 54(b) was an abuse of discretion. *Hayden v. McDonald*, 719 F.2d 266, 267–270 (8th Cir.1983). We thus dismissed the appeal because the court had not finally resolved the plaintiffs' remaining federal securities law claims and their claim of fraud under the Minnesota Blue Sky Act. *Id.* at 270.

On December 30, 1983, the district court granted the plaintiffs' motion to dismiss the remaining federal and state law counts. In effect, the plaintiffs put all their eggs into the state nonregistration basket. The defendants filed a new notice of appeal. The parties submitted supplemental briefs on the same issues earlier appealed, and we heard additional argument. The merits of the district court's summary judgment rulings are now properly before us.

## II. MERITS

Many of the facts and much of the law woven into the basket now holding the plaintiffs' 3.2 million eggs are not in dispute. The defendants admit they sold hundreds of undivided working interests in oil and gas leases to the plaintiffs, none of which was registered in accordance with Minnesota securities laws. Each sale was accompanied by three documents: (1) a Private Placement Agreement, describing the oil and gas lease and the rights and obligations of the respective parties; (2) an Operating Agreement, granting the defendants extensive control over the operation of wells on the lease; and (3) a Disclosure Acknowledgment Agreement, attesting to the plaintiffs' knowledge of the details of the transaction and, in particular, revealing that the purchased interests were not and would not be registered under the federal Securities Act of 1933 or under any state blue sky law. By virtue of the disclosure agreement, each plaintiff had at least constructive knowledge that the interests they purchased were not and would not be registered under the Minnesota Blue Sky Act.

As to the law, the parties concede that our review is governed by the traditional summary judgment standard, *see* Fed.R. Civ.P. 56(c), although the plaintiffs tend to refer to the district court's rulings as a type of directed verdict. Under this standard, the facts and inferences which may be derived therefrom must be viewed in a light most favorable to the defendants, and the burden is on the plaintiffs to establish that no genuine issue of material fact remains and that the case may be decided as a matter of law. *See Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir.1983). *Cf. Parker v. Seaboard Coastline Railroad*, 573 F.2d 1004, 1007 (8th Cir.1978) (stating substantially identical standard for appellate review of a trial court's grant of a directed verdict). In addition, all parties agree (1) that these interests should have been registered as securities under section 80A.08 or as interests in oil and gas lands under section 80A.30(1) of the Minnesota Blue Sky Act, *see* Minn.Stat.Ann. §§ 80A.08 & 80A.30(1) (West Supp.1984); and (2) that a purchaser of unregistered securities has an express cause of action for rescission and restitution under section 80A.23(1), *id.* § 80A.23(1).

Thus, our initial task is to determine whether the undivided working interests at issue are securities under the Minnesota Blue Sky Act, giving the benefit of all factual doubts to the defendants. If so, we must next decide what affirmative defenses, if any, are legally cognizable in a nonregistration action in Minnesota and whether any genuine issues of material fact remain as to any such available defenses. Next, we consider the propriety of the district court's integration approach to the statute of limitations and jurisdictional provisions of the blue sky laws. We then briefly address the liability of defendant Orison F. McDonald. Finally, we decide the proper measure of restitutionary recovery.

## A. Definition of Securities.

The defendants assert that the Minnesota Blue Sky Act recognizes a private cause of action only for nonregistration of securities. Section 80A.23(1) specifically states that "[a]ny person who sells a *security* in violation of [section 80A.08, which requires the registration of nonexempt securities] * * * is liable to the person purchasing the security from him, who may sue * * * in equity for rescission upon tender of the security." Minn.Stat.Ann. § 80A.23(1) (West Supp.1984) (emphasis added). The Act defines security to include "any * * * investment contract; * * * certificate of interest or participation in an oil, gas or mining right, title or lease or in payments out of production under the right, title or lease; or, in general, any interest or instrument commonly known as a security." *Id.* § 80A.14(18).

The Act also includes a separate section providing in part:

No person shall sell to any person in this state any lands represented to contain or to be a prospect for oil or gas, or any interest therein or thereunder, or in royalties therefrom, unless and until those lands, interests or royalties shall have been first registered under this chapter. Registration shall be made or denied in substantially the same manner and upon substantially the same grounds and conditions as are prescribed for the registration of securities by section 80A.11.

*Id.* § 80A.30(1).

The defendants claim that the express cause of action under section 80A.23(1) only reaches the nonregistration of securities, that securities do not include interests in oil and gas lands covered by section 80A.30(1), and that no implied private cause of action for violation of section 80A.30(1) exists. Under this view of the law, persons who violate section 80A.30(1) are subject to criminal—but not private civil—liability. *See id.* § 80A.22 (criminal penalties for violations of the blue sky laws). The defendants allege that at least a genuine issue of material fact remains as to whether the interests which they sold were securities,

giving rise to criminal and civil liability, or interests in oil and gas lands, giving rise only to criminal sanctions.

We agree with the district court that the undivided working interests here in issue were securities under section 80A.14(18) of the Minnesota Blue Sky Act as a matter of law. The Minnesota cases provide limited guidance on the scope of this general definition in the present context. The Minnesota Blue Sky Act, however, was modeled at least in part on the Uniform Securities Act. An official code comment to the definition of securities in the uniform act clearly states that the securities definition found in federal securities laws is similar to that of the uniform act insofar as it covers the sales of interests in oil and gas lands and projects. *See* Uniform Securities Act § 401, Commissioner's Note, 7A U.L.A. 631 (1978). The comment indicates that the reach of the securities definition in the uniform act, if different, would be broader than that in the federal statutes. *Id. Accord State v. Investors Security Corp.*, 297 Minn. 1, 209 N.W.2d 405, 409 (1973) (the Minnesota courts take an expansive view which has led to "a consistent broadening of the coverage of [the state's securities] statutes") (footnote omitted). The Minnesota legislature explicitly expressed its intent that the Minnesota Blue Sky Act be construed to effectuate the general purpose of uniformity with securities laws in other states and consistency with federal securities regulation in Minn.Stat.Ann. § 80A.31 (West Supp.1984). Thus, we look to cases construing the federal securities laws to guide us in interpreting section 80A.14(18) of the Minnesota Blue Sky Act in the context now before us.

The United States Supreme Court has held that interests virtually identical to those here in issue, and sold under similar circumstances, were "investment contract[s]" or interests "commonly known" as securities, and thus met these definitions of securities under the federal Securities Act of 1933, *see* 15 U.S.C. § 77b(1) (1982). *SEC v. C.M. Joiner Leasing Corp.*, 320 U.S. 344, 351–352, 64 S.Ct. 120, 123–24,

88 L.Ed. 88 (1943). The Court in *Joiner* specifically declined to rest its finding of coverage on the alternative definition of securities in the federal statute reaching "fractional undivided interest[s] in oil, gas, or other mineral rights," *see* 15 U.S.C. § 77b(1) (1982), because the interests at issue were tied to the actual conveyance of shares in real property. *SEC v. C.M. Joiner Leasing Corp., supra,* 320 U.S. at 352, 64 S.Ct. at 124. The Minnesota Blue Sky Act does not define securities to include fractional, undivided interests in mineral rights, but it does contain the identical investment contract definition relied upon in *Joiner.* *See* Minn.Stat.Ann. § 80A.14(18) (West Supp.1984).

■ The documents in the present record reveal that all plaintiffs were bound to enter an operating agreement with the defendants, giving the latter virtually unlimited control in the operation of the oil and gas wells involved. Any real property interests in the minerals in place or rights to take their shares in kind which the plaintiffs might have acquired were merely incidental to what was clearly an investment scheme, with the defendants running the show. As the *Joiner* Court stated, the defendants' offerings should "be judged as being what they were represented to be." *SEC v. C.M. Joiner Leasing Corp., supra,* 320 U.S. at 353, 64 S.Ct. at 124. Although Mack McDonald testified in his pretrial depositions that the plaintiffs were free to have others operate the wells to turn a profit on their investments, the undisputed facts as to what every plaintiff did and the documents always used to consummate these transactions belie such an assertion. In our view, no genuine issue of fact as to the essence of these transactions is raised by the defendants' pleadings, depositions, or offers of proof, nor by any other part of the record. Thus, the interests sold by the

defendants under the circumstances of this case would undoubtedly fall under the investment contract definition of securities in the federal securities laws, and likewise under the identical definition in the Minnesota Blue Sky Act.[2] *See SEC v. W.J. Howey Co.,* 328 U.S. 293, 300–301, 66 S.Ct. 1100, 1103–04, 90 L.Ed. 1244 (1946) (investment contract definition applied to real property development); *State v. Investors Security Corp., supra,* 209 N.W.2d at 405–408 (same).

The defendants' counterargument to the inclusion of these interests under the general securities definition is that the facts alleged and evinced in the pretrial record fall directly under the provisions of section 80A.30(1), a clause not found in the federal statutes and dealing specifically with the sale of interests in oil and gas lands. They note that the Minnesota Supreme Court has classified similar transactions under the predecessor to section 80A.30(1), Minn.Stat. Ann. § 80.30 (West 1968) (repealed by Laws 1973, c. 451, § 32, subd. 1), rather than the general securities definition. *See Virnig v. Smith,* 252 Minn. 363, 90 N.W.2d 241, 242–245 (1958); *State v. Golden,* 216 Minn. 97, 12 N.W.2d 617, 618–619 (1943). Although admitting that the Minnesota courts recognized a private right of action under the predecessor to section 80A.30(1), *see Virnig v. Smith, supra,* 90 N.W.2d at 242 n. 2, the defendants claim that the cause of action did not survive the 1973 revision of the Minnesota Blue Sky Act. The 1973 legislation expressly recognized a private cause of action to rescind the sale of unregistered securities, but not for violations of section 80A.30(1), and the new statute stated that it created no cause of action unspecified therein, Minn.Stat.Ann. § 80A.23(11) (West Supp.1984). The defendants assert that the specific provisions

---

**2.** Besides the investment contract definition of securities, the interests now before us would certainly be included under the interests "commonly known" as securities provision of Minnesota's general definitional section. Moreover, the several documents accompanying the transactions now before us might collectively be considered a "certificate of interest or participation

in an oil, gas or mining right, title or lease," another alternative definition of securities in the Minnesota Blue Sky Act, Minn.Stat.Ann. § 80A.14(18) (West Supp.1984). *See* Uniform Securities Act § 401, Commissioner's Note, 7A U.L.A. 631 (1978) (explaining meaning of certificate of interest or participation in an oil or gas lease).

of section 80A.30(1), under which the plaintiffs would have no private right of action, are exclusive of duplicative coverage under the general securities definition.

We agree that implied causes of action are not available under the current provisions of the Minnesota Blue Sky Act. We cannot, however, accept the defendants' claim that particular interests cannot be covered under both the specific provisions of section 80A.30(1) and the general definition of securities in section 80A.14(18). Such an interpretation of the Minnesota statutes would assume that the legislature *sub silentio* extinguished a private cause of action previously recognized in the Minnesota courts, and would diminish the protection given to the public under the Minnesota securities laws as compared to that under the securities laws of other states and the federal government. This result would directly conflict with the remedial purposes of the securities laws and with the penchant for consistent state and federal interpretation expressed in section 80A.31 of the Minnesota Blue Sky Act, *id.* § 80A.31.

Thus, we find no error in the district court's ruling that the interests here in issue are securities as defined in section 80A.14(18) as a matter of law. Given our view that Minnesota law permits an interest to fall under both the general and specific definitions in the statute, we need not address whether the facts alleged by the defendants show that these securities might also be interests in oil and gas lands covered by section 80A.30(1).[3]

### B. Affirmative Defenses.

The defendants assert four equitable doctrines as affirmative defenses to rescission and restitution by the plaintiffs for nonregistration of securities in the instant case: waiver, estoppel, ratification, and *in pari*

*delicto.* In its order of December 20, 1982, the district court dismissed the ratification defense as nothing more than another label for the defendants' waiver theory. While we agree that the facts supporting each of the alleged defenses overlap, we think the ratification theory is more analogous to the defendants' estoppel defense insofar as estoppel has been developed by the Minnesota Supreme Court. *See* Note, *The Minnesota Supreme Court: 1980,* 65 Minn.L. Rev. 1063, 1070 n. 3 (1981). We therefore consider estoppel and ratification as essentially identical defenses on the facts of the present case.

### (1) Waiver.

The district court found that the record developed prior to trial was sufficient to raise a factual question whether the plaintiffs had impliedly waived their right to rescind their purchases for nonregistration. All plaintiffs had at least constructive knowledge that the securities which they purchased were not registered under Minnesota securities laws at the times of their purchases. The pretrial documents and testimony, when read in a light most favorable to the defendants, also indicate that the plaintiffs impliedly relinquished their rescission rights based on such nonregistration in a voluntary, intentional, knowing, and intelligent manner; indeed, some plaintiffs were Minnesota attorneys familiar with the securities laws and many others were represented by Minnesota attorneys associated with firms specializing in securities transactions.

We agree with the court's legal conclusion, however, that waiver is not available as a defense to nonregistration under the Minnesota Blue Sky Act, regardless of the facts which would support such a defense. The Minnesota statute clearly provides: "Any condition, stipulation or provision

---

**3.** We likewise find it unnecessary to speculate whether *any* interests covered as interests in oil and gas lands under Minn.Stat.Ann. § 80A.30(1) (West Supp.1984) might not be securities under the general definition in section 80A.14(18), *id.* § 80A.14(18). In our view, section 80A.30(1) would have a valid purpose even assuming all interests defined therein also met the general definition of securities, *i.e.,* the exemptions normally applied to securities transactions, such as the exemption for private corporate formation, would not automatically apply to transactions which were also covered by section 80A.30(1). *See id.* §§ 80A.15(2)(k), 80A.30(2).

binding any person to waive compliance with any provision [of this Act] or any rule or order hereunder in the purchase or sale of any security is void." Minn.Stat.Ann. § 80A.23(10) (West Supp.1984). The Minnesota Supreme Court has interpreted this clause to prevent an arbitration agreement from barring a civil action by one party to that agreement against another party based upon an alleged violation of the blue sky laws. *Kiehne v. Purdy,* 309 N.W.2d 60, 61 (Minn.1981).

Although the arbitration agreement in *Kiehne* was an express "condition, stipulation or provision," we hold that section 80A.23(10) applies with equal force to allegations of implied waiver. The Fifth Circuit has held under a virtually identical nonwaiver provision in the federal Securities Act of 1933, 15 U.S.C. § 77n (1982), that a waiver implied from the sellers' written notice of nonregistration some time after the sale of securities and the purchasers' failure to immediately rescind did not bar a later action for rescission because of nonregistration. *Meyers v. C & M Petroleum Producers, Inc.,* 476 F.2d 427, 429–430 (5th Cir.), *cert. denied,* 414 U.S. 829, 94 S.Ct. 56, 38 L.Ed.2d 64 (1973). In *Meyers,* the purchasers were not only informed that the securities which they had purchased were unregistered, as the plaintiffs were constructively informed in the instant case, but also that the failure to register violated state and federal securities laws. *Id.* at 428. In the face of these facts, the Fifth Circuit simply stated, "[W]hile the defendants-appellees established a waiver, the statute permits none." *Id.* at 430. *Accord Can-Am Petroleum Co. v. Beck,* 331 F.2d 371, 373 (10th Cir.1964) (remedial aspects of the Securities Act of 1933 "cannot be waived either directly or indirectly").

■ We are convinced that the Minnesota courts would give a similar interpretation to the nonwaiver provision in the Minnesota Blue Sky Act. The nonwaiver provi-

sion in the Uniform Securities Act—one basis for Minnesota's blue sky laws—is modeled on the federal provision. 3 Loss, Securities Regulation 1648 n. 98 (2d ed. 1961). In addition, the Minnesota statute expresses a clear preference for consistent interpretation of state and federal securities regulation. Minn.Stat.Ann. § 80A.31 (West Supp.1984). Thus, the plaintiffs' mere knowledge that the securities before us were not registered, that they should have been registered, and even that they had the right to rescind from the time of purchase is no defense to their action for rescission and restitution based on such nonregistration.

#### (2) Estoppel/Ratification.

The second affirmative defense raised by the defendants is a variant on the doctrine of equitable estoppel. As the Minnesota Supreme Court has interpreted this defense in the securities regulation context, it does not include an element traditionally associated with estoppel, *i.e.,* detrimental reliance by the party asserting the defense. *See* Note, *Minnesota Supreme Court: 1980, supra,* at 1070 n. 3. Thus, we consider this defense as a form of ratification by conduct labeled by the Minnesota courts as estoppel for purposes of its securities laws.

One facet of this estoppel defense is expressed in the Minnesota Blue Sky Act itself:

> No person who has made or engaged in the performance of any contract in violation of any provision of this section or any rule or order hereunder or has acquired any purported rights under any such contract with knowledge of the facts by reason of which its making or performance was in violation may base any suit on such violation under the contract.

Minn.Stat.Ann. § 80A.23(9) (West Supp. 1984).[4]

---

**4.** The plaintiffs label Minn.Stat.Ann. § 80A.23(9) (West Supp.1984) as a statutory form of the defense of *in pari delicto.* Although we view the section as more analogous to the

estoppel defense in Minnesota law, our analysis would be the same even if we adopted the *in pari delicto* label.

The defendants assert that all plaintiffs in the present case purchased their interests with full knowledge of the fact of nonregistration and thus should be barred from suit under the plain language of this provision. The Minnesota Supreme Court has indicated in dicta, however, that a literal interpretation of section 80A.23(9) is not the law of that state. In *McCauley v. Michael*, 256 N.W.2d 491 (Minn.1977), a seller of securities failed to deliver shares of stock out of escrow which were previously paid for by the purchaser. The purchaser sued, seeking either damages for the conversion of the stock or specific performance of the contract. *Id.* at 494–495. Because the purchaser knew that the securities were in escrow at the time of the contract and that such a contract violated the Minnesota securities laws applicable to this pre-1973 transaction, the court would not assist the purchaser by enforcing the illegal agreement. *Id.* at 496.

 The court did allow a restitutionary recovery of the $500 which the purchaser had given the seller. The court explained:

> The new statute on purchaser remedies, Minn.St. 80A.23, permits rescission for the purchaser in subd. 1, but in subd. 9 bars recovery under the contract by persons "with knowledge of the facts by reason of which its making or performance was in violation of the securities act." Rescission in this sense, that is, return of money upon tender of the securities, is an equitable remedy, and is actually restitutionary in character. Since McCauley never received the securities, but at most an illegal contractual obligation to receive them following the escrow, the cancellation of this contract makes return of his initial payment appropriate. McCauley's knowledge was sufficient to bar him from suit under the contract (§ 80A.23, subd. 9), but not so extensive as to prevent refund of his money given in the illegal transaction.
>
> Although the new statute does not by its terms apply to this case, since it was passed in 1973, it does little more than codify existing common-law remedies in this area. 6A Corbin, Contracts, § 1540; see, also, Restatement, Contracts, §§ 598 to 605, especially § 604. The trial court properly refused to enforce the bargain, or alternatively to grant damages for breach of contract. On the other hand, as the court noted in its memorandum attached to the amended finding, "it would be inappropriate for the defendant to benefit from his acts relative to this transaction." The return of McCauley's $500 will leave the parties where they were prior to this transaction.

*Id.* at 500–501.

This language from *McCauley* stands for at least two propositions: (1) that section 80A.23(9) should only bar the *enforcement* of contracts illegal because of violations of the Minnesota Blue Sky Act; and (2) that the rescission and restitution provisions codified in the securities laws should be construed in the context of the "common-law remedies" from which they came. Thus, the plaintiffs' action for rescission and restitution is not barred merely by the provisions of section 80A.23(9). *Accord Frachiseur v. Mountain View Irrigation Co.*, 100 Idaho 336, 597 P.2d 222, 226 n. 5 (1975); *Titan Oil & Gas, Inc. v. Shipley*, 257 Ark. 278, 517 S.W.2d 210, 221 (1974) (supplemental opinion on denial of rehearing filed January 20, 1975); 3 Loss, *supra*, at 1648. *But cf. Frachiseur v. Mountain View Irrigation Co., supra*, 597 P.2d at 225 n. 3 (statute analogous to section 80A.23(9) bars suits on the contract, rather than suits "on [the] violation under the contract"); *Titan Oil & Gas, Inc. v. Shipley, supra*, 517 S.W.2d at 220 (same); 3 Loss, *supra*, at 1648 (same); Uniform Securities Act, *supra*, § 410(f), 7A U.L.A. at 671 (same).

Section 80A.23(9), however, is not the only type of estoppel cognizable in a securities action under Minnesota law. The *McCauley* court succinctly stated that "[w]hile the securities laws intend protection of the purchaser, they do not intend such results whatever the equities of a particular case." *McCauley v. Michael,*

*supra*, 256 N.W.2d at 497. In *Logan v. Panuska*, 293 N.W.2d 359 (Minn.1980), a case decided after *McCauley* but still technically under pre-1973 Minnesota securities laws, the Minnesota Supreme Court discussed conduct establishing an estoppel as one of the equities relevant to the securities laws. *Logan* decided consolidated cases filed by the purchasers of shares in a restaurant and liquor operation seeking rescission and restitution based on the nonregistration of their shares. *Id.* at 360–362. Many of the purchasers participated extensively in the management of the business after investing, *id.* at 361, and the purchasers stayed in the business until it totally failed in 1973, *id.* at 362.

The *Logan* court held that equitable estoppel was a defense available to bar the purchasers' action for rescission and restitution, even though prior Minnesota cases referred to contracts made in violation of the registration provisions of the Minnesota blue sky laws as void and traditionally only voidable contracts could be subsequently ratified or condoned. *Id.* at 362–363. The court refused to give dispositive significance to labels such as "void" and "voidable," stating that such labels should not "prevent a court from acting fairly by applying equitable principles." *Id.* at 363.

Importantly, the *Logan* decision detailed the purchasers' conduct which contributed to the validity of the seller's equitable estoppel defense therein:

Some of the plaintiffs bought into the restaurant only after being patrons of the establishment for a period of time and seeing its volume of business. *The plaintiffs were not induced to buy the stock through any misrepresentation of the defendant* as to the financial condition of the restaurant. One plaintiff testified that he was informed of the investment opportunity by another plaintiff, Arthur Krueger, his brother-in-law, who encouraged him to contact the defendant. *The plaintiffs actively participated in the management and control of the corporation during the course of their investment.* Several were members of an executive committee, which was responsible for day-to-day operation of the restaurant, and received and read financial statements dealing with the business. All voluntarily paid an additional assessment that was necessary to keep the restaurant open. *Some of the plaintiffs even acquired additional stock from other shareholders after their initial purchases. Finally, none took any steps to rescind their stock purchases until after the business had failed.* In a situation such as this, it would be inequitable to allow the plaintiffs to foist their losses upon the defendant.

*Id.* at 363–364 (emphasis added).

The Minnesota Supreme Court, viewing the above facts in a light most favorable to the *plaintiffs,* affirmed the trial court's directed verdict in favor of the defendants on the basis of equitable estoppel. *Id.* at 364.

The precepts of *Logan* apply to the present case under the 1973 Minnesota Blue Sky Act. A dissenting opinion in *Logan* discussed the case as if it were brought under the 1973 legislation, *see id.* at 364–365 (Scott, J., dissenting); neither the prior securities laws nor the 1973 statute explicitly addressed the question of equitable estoppel; and the plaintiffs to the instant case do not seriously argue that *Logan* is no longer good law. They do argue that the facts in *Logan* differ from the present case and they concur in the district court's conclusion that the defendants alleged facts for the most part establishing only a waiver of the plaintiffs' rights to rescind, a defense which is statutorily unavailable under section 80A.23(10), Minn.Stat.Ann. § 80A.23(10) (West Supp. 1984).

■ Viewing the facts and inferences to be drawn therefrom in a light most favorable to the defendants, the pretrial record in the instant case contains facts in many respects similar to those in *Logan* with one essential difference: here, the plaintiffs did not actively participate in the management and control of the promoted enterprise. The question thus is whether this difference is alone sufficient to distinguish the

instant case from *Logan*. While the question is a close one, we believe that the Minnesota Supreme Court if directly faced with this inquiry would hold that such participation is essential to a *Logan* estoppel. This is not to say that an investor's active participation in the management and control of the business is enough in itself to estop a rescission action for nonregistration; *Logan* relied on other factors in addition to the necessary participation. We only decide that, in the absence of such participation, the additional factors in *Logan* and those alleged and proffered by the defendants herein do not create an equitable estoppel.

The reasons for our decision are several:

(1) This case calls for the federal courts to apply the securities laws of the State of Minnesota. The district court decided in the first instance that the facts alleged and proffered would not support an estoppel defense under the law of the state in which it sits. Under these circumstances, we must give great weight to the lower court's interpretation of state law. *See R. W. Murray v. Shatterproof Glass Corp.*, 697 F.2d 818, 821 (8th Cir.1983) (diversity action).

(2) The Minnesota Supreme Court in *Logan* emphasized that the plaintiffs actively participated in the management and control of the business in which they invested. *Logan v. Panuska, supra*, 293 N.W.2d at 361–364. In fact, the court summarized the trial court's decision in one of the consolidated *Logan* cases largely in terms of this factor. The court stated, "At the close of the presentation of plaintiff's case, the trial court held that plaintiffs had failed to make a prima facie case [of rescission] because their conduct in participating in the management of the business and in acquiring additional stock estopped them from rescinding the sale of stock." *Id.* at 362. Thus, the *Logan* majority itself gave strong indications that active participation in the management and control of the promoted business is one *sine qua non* of equitable estoppel in a rescission for nonregistration action. *See* Note, *Minnesota Supreme Court: 1980, supra*, at 1070.

(3) A strong dissent in *Logan* likewise read the case as permitting the use of the defense of equitable estoppel only if there were active participation in the management and control of the promoted business. Justice Scott, dissenting in the five-to-three Minnesota Supreme Court decision, criticized the majority for prompting "clever promoters of questionable investments" to encourage investor participation in the management of the promoted business in order to create an estoppel defense and thereby ignore the blue sky laws. *Logan v. Panuska, supra*, 293 N.W.2d at 364 (Scott, J., dissenting).

(4) We also give serious consideration to decisions in other jurisdictions interpreting and applying securities laws similar to the Minnesota Blue Sky Act. *See* Minn.Stat. Ann. § 80A.31 (West Supp.1984). Several federal and state courts have declined to allow equitable defenses to securities actions on facts similar to those here before us. *See, e.g., Meyers v. C & M Petroleum Producers, Inc., supra*, 476 F.2d at 429–430; *Graham v. Kane*, 264 Ark. 949, 576 S.W.2d 711, 712–714 (1979); *Covert v. Cross*, 331 S.W.2d 576, 585 (Mo.1960) (en banc). *Contra Clapp v. Peterson*, 327 N.W.2d 585, 586–587 (Minn.1982) (applying equitable estoppel defense to rescission action under Minnesota franchise laws); *Schultz v. Rector-Phillips-Morse, Inc.*, 261 Ark. 769, 552 S.W.2d 4, 13–14 (1977) (en banc) (equitable estoppel in Arkansas securities action). The weight of authority supports basing the equitable estoppel defense in conduct which can be easily distinguished from an implied waiver of rescission rights, conduct such as active participation in the management and control of the promoted business. *See Tucker v. McDell's, Inc.*, 50 Tenn.App. 62, 359 S.W.2d 597, 600 (1961) (certiorari denied by Tennessee Supreme Court on February 8, 1962); Loss, Fundamentals of Securities Regulation 1191–1192 & n. 63 (1983) (nonwaiver provisions may also bar some assertions of ratification or estoppel).

■ (5) The blue sky laws were enacted to protect the public and should be liberally

interpreted in favor of penalizing a seller of unregistered securities in the absence of strong equities to the contrary. *See McCauley v. Michael, supra,* 256 N.W.2d at 495–496; *Graham v. Kane, supra,* 576 S.W.2d at 713–714. Thus, a federal court should construe state securities laws in a manner which would err, if at all, in favor of the investing public. This the district court did in its refusal to recognize an estoppel defense on the record in the instant case.

(6) Finally, our decision does not leave clever investors free under any circumstance to take advantage of risk-free investments from persons who sell unregistered securities. The sellers of such securities in Minnesota may cut off rescission liability by making a repurchase offer as provided in Minn.Stat.Ann. § 80A.23(8) (West Supp.1984).

In the instant case, the defendants failed to allege or offer proof that any of the plaintiffs participated in the management and control of the Texas oil and gas operations in which they invested. Although Mack McDonald asserted in his depositions that the plaintiffs retained the power to take more active roles in the operation of the wells, the Operating Agreements signed by each plaintiff and the defendants' unfettered control of the actual operation of the wells, admitted to by the defendants, removed any dispute regarding the participation issue in *Logan.* The plaintiffs did not participate in the management and control of the defendants' business herein.

In sum, we read the *McCauley* decision to restrict the statutory defense created in section 80A.23(9) to actions seeking enforcement of illegal contracts. We acknowledge that equitable estoppel, as defined in *Logan,* is an available defense to an action for rescission and restitution based on the nonregistration of securities in Minnesota. We agree with the district

court, however, that the facts alleged and proffered by the defendants in this case would not support an estoppel defense as to any of the plaintiffs.

**(3) In pari delicto.**

■ We now address the *in pari delicto* defense which the defendants have raised against four or five plaintiffs who actively sought out new buyers for the defendants' securities.[5] We note that *in pari delicto* is an available defense in this type of action, *see McCauley v. Michael, supra,* 256 N.W.2d at 495, 500, and that the essence of the defense is that "one party cannot recover against another when both are equally at fault," *F & H Investment Co. v. Sackman-Gilliland Corp.,* 728 F.2d 1050, 1054 (8th Cir.1984) (citation omitted). The defendants allege that several plaintiffs acted in a "sales capacity," finding new buyers for the defendants' undivided working interests. The district court admitted that the present record reflected the promotional activities of some plaintiffs and the receipt of some free working interests by about thirty of the plaintiffs, in exchange for their promotional help or otherwise. It held, however, that none of the plaintiffs participated in the decision not to register the securities and thus none possessed a degree of culpability with regard to the nonregistration violation sufficient to establish an *in pari delicto* defense.

■ We hold that the district court's approach to the *in pari delicto* defense was overly restrictive. The violation in this case was not the decision not to register, but the offer and sale of securities which in fact were not registered. It appears on this record that each plaintiff who was allegedly *in pari delicto* had full knowledge that the securities which they promoted were not registered, making them equally culpable insofar as the nonregistration violation was concerned.[6] That these plain-

---

**5.** The district court discussed four such plaintiffs-promoters; the defendants allege on appeal and the record could support that at least five

plaintiffs were so involved. *See supra* note 1 and accompanying text.

**6.** These plaintiffs-promoters were not made defendants in the present action. *See* Minn.Stat.

tiffs-promoters did not participate in the initial decision not to register seems to us irrelevant to the *in pari delicto* determination in this matter.

The district court's heavy reliance on *Can-Am Petroleum Co. v. Beck, supra,* in considering this defense is misplaced. In that case, a gullible investor was found not *in pari delicto* with a seller who was sued for the nonregistration of certain "misrepresented" securities. *Can-Am Petroleum Co. v. Beck, supra,* 331 F.2d at 372 & n. 1. In contrast to the situation now before us, the investor was drawn into the scheme by various misrepresentations of the seller. *Id.* at 373. Moreover, the Tenth Circuit did not discuss in its opinion in *Can-Am Petroleum* whether the plaintiff-investor promoted the investment with full knowledge that the securities were unregistered. *Id.* at 372–374. Finally, we would disagree with the case should its result be based on facts more similar to those we now consider.

We therefore reverse the district court's holding with regard to the *in pari delicto* defense. On remand, the defendants may amend their pleadings and motions and present proof at trial with regard to the knowledge and promotional activities of any of the plaintiffs relevant to this alleged defense.

## C. Integration of Offers and Sales.

The defendants also allege that the claims of various plaintiffs are based upon offers or sales of unregistered securities which cannot support an action under the Minnesota Blue Sky Act because (1) the sales were made more than three years before the commencement of the present actions, the period of limitations created in Minn.Stat.Ann. § 80A.23(7) (West Supp. 1984); or (2) the offers or sales were not made in Minnesota, a requirement for civil nonregistration liability under Minnesota law, *see id.* §§ 80A.08, 80A.27(1), (3)–(4). The district court held that, although indi-

vidual offers or sales at issue might be barred by the statute of limitations or jurisdictional provisions when considered in isolation, all the offers and sales were part of a continuing investment scheme and thus could be "integrated" to avoid any statute of limitations or jurisdictional problems. We hold that the integration theory is not appropriate to these questions in an action based entirely upon the nonregistration of securities in Minnesota.

The analysis of the district court was virtually identical with regard to both questions now under consideration. The court recognized that the integration of several offers or sales has been used to avoid the private offering exemption in federal securities laws. *See, e.g., SEC v. Murphy,* 626 F.2d 633, 645–646 (9th Cir.1980), and cases cited therein. The court also noted that the Minnesota Supreme Court has discussed the integration of several sales made within a relatively short period of time as relevant to the isolated sale exemption in prior Minnesota securities law. *See Anderson v. Mikel Drilling Co.,* 257 Minn. 487, 102 N.W.2d 293, 298–299 (1960). The district court then assumed that the same integration theory could be used to avoid statute of limitations and jurisdictional defenses to the nonregistration claims of the plaintiffs, which all arose out of the defendants' single oil and gas enterprise. We do not accept this assumption and hold that the statute of limitations and jurisdictional requirements of the Minnesota Blue Sky Act must be applied on remand to each purchase which the plaintiffs wish to rescind as a separate transaction.

### (1) Statute of Limitations.

The district court cited two cases to support its application of the integration theory to the statute of limitations defense in the instant case. Neither of these cases controls. In *Livens v. William D. Witter, Inc.,* 374 F.Supp. 1104 (D.Mass.1974), the federal district court for the District of

Ann. § 80A.23(3) (West Supp.1984) (agent who materially aids in violation is jointly and sever-

ally liable).

Massachusetts discussed the integrated offering doctrine in the context of an alleged private offering exemption under federal securities law, and found on the facts that the doctrine should not apply. *Id.* at 1106–1107. The *Livens* court did not apply the integration theory to defeat the defendants' statute of limitations defenses therein. *See id.* at 1107–1108. The other case relied on by the district court herein, *Kennedy v. Tallant*, [1976–1977 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 95,779 (S.D.Ga. 1976), *aff'd*, 710 F.2d 711 (11th Cir.1983), employed a variety of concepts, including integration, to toll the statute of limitations in a securities fraud case in which the defendants concealed much of their fraudulent activity. *See id.* at 90,823–90,824. On appeal, the Eleventh Circuit declined to review the integration theory, resting its affirmance of the statute of limitations question on alternative grounds. *Kennedy v. Tallant*, 710 F.2d 711, 716 n. 3 (11th Cir. 1983). Even assuming that either of these district court cases stands for the proposition that the integration theory might avoid the statute of limitations in an action for failure to register under federal law or the law of other states, the cases do not accurately reflect Minnesota law on the subject.

In the first place, the Minnesota Supreme Court has strictly construed the statute of limitations in prior Minnesota securities law to deny an equitable tolling of the limitations period even in the face of allegations of fraudulent concealment by the defendant. *Kopperud v. Agers*, 312 N.W.2d 443, 446–447 (Minn.1981). The plaintiffs herein cite no authority indicating a more lenient approach to the statute of limitations in the revised Minnesota Blue Sky Act by any Minnesota court. In addition, one federal judge applied the limitations period in pre-1973 Minnesota securities law separately to transactions spanning several years when using that limitations period in a federal securities fraud action, *see Bailey v. Piper, Jaffray & Hopwood, Inc.*, 414 F.Supp. 475, 483 & n. 8 (D.Minn.1976), and another denied equitable tolling of the statute of limitations in a nonregistration claim under the present Minnesota Blue Sky Act,

*Appelbaum v. Ceres Land Co.*, 546 F.Supp. 17, 20–21 (D.Minn.1981), *aff'd*, 687 F.2d 261, 263 (8th Cir.1982). We view this authority as favoring a continued strict interpretation of the limitations period in section 80A.23(7) of the present statute, especially in actions based entirely upon the nonregistration of securities.

The statute clearly makes each offer or sale of an unregistered, nonexempt security a separate violation. Minn.Stat.Ann. § 80A.08 (West Supp.1984). The statute of limitations provides that any action for rescission and restitution must commence within "three years after *the sale* upon which such action is based." *Id.* § 80A.23(7) (emphasis added). Thus, the seller need make only one prohibited sale to create liability, and the purchaser's time for legal action on that liability is triggered with that one sale. The integration theory, although appropriate to determine whether the seller's total effect on the marketplace merits any governmental regulation, should not be used to alter the statute of repose on private legal actions which flow from that governmental regulation once properly imposed. We cannot read the Minnesota statute or cases to mean that any sale made as part of a public offering may indefinitely support a claim for nonregistration as long as the offering remained extant within three years of an action on that claim.

### (2) Jurisdictional Restrictions.

The registration requirement in the Minnesota Blue Sky Act has clear jurisdictional limits; it is only unlawful "to offer or sell any security *in this state*" which is unregistered and nonexempt, Minn.Stat.Ann. § 80A.08 (West Supp.1984) (emphasis added). The statute provides that its registration requirement applies to offers and sales of securities "when (a) an offer to sell is made in this state or (b) an offer to buy is made and accepted in this state." *Id.* § 80A.27(1). It further provides that, for purposes of the registration requirement,

"an offer to sell which is not directed to or received by the offeree in this state is not made in this state." *Id.* § 80A.27(3). The defendants allege that some offers to the plaintiffs were not "directed to or received by the offeree in [Minnesota]," that the resulting sales were not consummated there, and that therefore these offers and sales did not run afoul of the registration requirement in the Minnesota Blue Sky Act.

The district court used the integration approach to establish Minnesota jurisdiction over all contested transactions. It held that all plaintiffs were initially solicited by the defendants in Minnesota or by Minnesota-based promoters. It then held that subsequent purchases could be integrated with the initial transactions and thus considered Minnesota activities, even if the later transactions occurred without further connection with the state. We decline to adopt the court's reasoning insofar as it integrated the separate transactions.

We do not understand the defendants to argue on appeal that the initial purchase by any plaintiff was not covered by the Minnesota Blue Sky Act; all plaintiffs apparently were first solicited by the defendants in Minnesota or by Minnesota-based promoters acting on behalf of the defendants. *Cf. Martin Investors, Inc. v. Vander Bie,* 269 N.W.2d 868, 873–874 (Minn.1978) (similar jurisdictional provisions in Minnesota Franchise Act construed to cover offers based on advertisement activities in Minnesota and sample contracts mailed to the potential investor in Minnesota); *Olson v. Thompson,* 273 Minn. 152, 140 N.W.2d 321, 322 (1966) (applying agency theory to reach sales under prior securities law). The defendants do argue that subsequent sales to some plaintiffs which had no further connection with the state should not be integrated with their initial offers and sales. We note that the district court cited no case which adopted an integration approach to jurisdictional provisions such as those in the Minnesota Blue Sky Act. Nor have the plaintiffs cited us any case directly on point in this regard.

In our view, we should not graft an integration amendment onto the jurisdictional provisions of the Minnesota Blue Sky Act in the absence of authority supporting such an extension of Minnesota's regulatory coverage. The Minnesota legislature passed a detailed provision restricting the scope of its registration requirement, Minn. Stat.Ann. § 80A.27 (West Supp.1984), and defined violations in terms of separate transactions. In many instances, all an investor's transactions with a seller of securities might conceptually flow from the parties' initial contact in one state. We do not think that this logical connection should bring all the parties' disputes within the jurisdictional reach of that state, nor that the Minnesota courts would do so on the facts of the present case.

### D. Liability of Orison F. McDonald.

The defendants also assert that Orison F. McDonald, a retired businessman and the father of Mack McDonald, should not be held liable for the nonregistration of securities herein. The district court found no dispute that Orison McDonald was the vice president and treasurer of McDonald Investments, a fifty-percent stockholder in the company, and one of its three directors. Under Minn.Stat.Ann. § 80A.23(3) (West Supp.1984), "[e]very person who directly or indirectly controls a person liable [for the nonregistration of securities] * * *, every partner, principal executive officer or director of such person, [and] every person occupying a similar status or performing a similar function * * * are also liable jointly and severally with and to the same extent as such person." The court's findings with regard to Orison McDonald clearly fit this controlling person description for purposes of liability for the nonregistration of securities in Minnesota.

While not raising any dispute regarding the facts of Orison McDonald's participation in their operations, the defendants assert that he did not and could not reason-

ably know that the interests sold by the defendants were securities which had to be registered in Minnesota. The Minnesota Blue Sky Act provides an exception for primary and controlling person liability in nonregistration actions where the defendant "shall sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of facts by reason of which the liability is alleged to exist." *Id.* § 80A.23(4). This exception does not apply to the present action.

■■■ The defendants do not allege that Orison McDonald was ignorant or could not learn that his company was selling interests in oil and gas operations which in fact were not registered under the Minnesota Blue Sky Act. The failure to register and the sale of unregistered interests were the "facts" establishing liability. Orison McDonald's alleged good faith and reasonable belief that the interests were not securities which needed to be registered addresses a legal conclusion, not a matter of fact. He knew all the facts necessary for liability, so we agree with the district court that he was liable as a controlling person for the nonregistration of securities herein.

### E. Proper Measure of Recovery.

The defendants finally allege that the district court erred in declining to reduce the restitutionary recovery awarded to the plaintiffs by the amount of tax benefits they realized in claiming deductions on their past income tax returns based on their investments in the defendants' enterprise. The court appointed Thomas Reardon as a special tax consultant to analyze the past tax benefits received by the plaintiffs as a result of the investments at issue

and the future tax consequences should their purchase monies be returned. The parties accepted Reardon's calculations as accurate in a pretrial stipulation of facts.

The Reardon report revealed that, as of December 31, 1981, the plaintiffs invested a total of $2,705,500 with the defendants and realized income from the defendants on their investments of $429,951.25. Thus, the amount invested less income received from the defendants was $2,275,548.75. The report further calculated this net investment less all past tax benefits realized by the plaintiffs as a result of their investments as $1,217,302. Finally, it estimated the total amount necessary to return the plaintiffs' net dollar investments in full, considering both past tax benefits and future tax consequences of a restitution award, as $2,233,049.[7]

The district court rejected the defendants' contention that any recovery awarded to the plaintiffs should be reduced by their past tax benefits, thus limiting the maximum amount the plaintiffs could receive as a return of net investment to $1,217,302. Instead, the court decided not to consider any tax aspects of these transactions, past or future. Thus, it awarded the plaintiffs their investment less any income received from the defendants, $2,275,548.75, plus interest, attorneys' fees, and costs, for a total award of over $3.2 million.

The defendants base their contention that the court erred in failing to deduct past tax benefits on our decision in *Austin v. Loftsgaarden*, 675 F.2d 168 (8th Cir. 1982). In *Austin*, we addressed the relevance of tax benefits realized from certain real estate limited partnership investments in assessing actual damages in a federal and state securities fraud action. We held

---

**7.** The district court recognized that the reason the net investment calculation when considering all tax consequences differed from the net investment calculation in the absence of tax considerations was the change in the economic status of many plaintiffs. Past deductions claimed by the plaintiffs may have to be disallowed with the return of their investments, un-

der the tax benefit rule, and those amounts might subsequently be taxed based on the plaintiffs' current financial conditions. *See Hillsboro National Bank v. Commissioner*, 460 U.S. 370, 378–381 & nn. 10, 12, 103 S.Ct. 1134, 1140–42 & nn. 10, 12, 75 L.Ed.2d 130, 142–144 & nn. 10, 12 (1983).

on the facts of that case that a "rescissory measure" could be used to calculate actual damages flowing from the defendants' fraudulent activities. *Id.* at 180–181, 183–184. We noted, however, that "[t]he actual damages principle requires that a rescissional or restitutional award be 'reduced by any value received as a result of the fraudulent transaction.'" *Id.* at 181 (quoting *Garnatz v. Stifel, Nicolaus & Co.,* 559 F.2d 1357, 1361 (8th Cir.1977), *cert. denied,* 435 U.S. 951, 98 S.Ct. 1578, 55 L.Ed.2d 801 (1978)). The district court in *Austin* excluded evidence of the plaintiffs' tax savings on the damages issue, but we reversed finding error in the court's refusal "to allow proof of any economic benefits received by plaintiffs on account of the investment and in failing to instruct the jury that the damage award must be reduced by any value shown to have been received by plaintiffs." *Austin v. Loftsgaarden, supra,* 675 F.2d at 181.

Initially, we reaffirm our position in *Austin* that tax benefits may be relevant to the damages computation in a securities fraud action and to a restitutionary measure of recovery in general. Fraud damages are in essence compensatory, and restitution is aimed at returning the plaintiff to her or his status quo prior to the defendant's illegal activity. In our view, these measures of recovery would allow consideration of both past tax benefits, which were at issue in *Austin,* and future tax consequences of a recovery. In only this way would the actual damage of the plaintiff be fully compensated or the status quo *ante* be accurately approximated. Therefore, if *Austin* controlled the present case, we would take into account both the tax benefits which the defendants wish us to consider and the tax consequences of recovery. We would not confine the inquiry to the half loaf that the defendants would focus upon. We hold, however, that *Austin* is inapposite to the present action for rescission and restitution by reason of the nonregistration of securities under the Minnesota Blue Sky Act.

Our decision not to follow *Austin* in the present case is not based on the view of some courts that plaintiffs would be required to include recovered investments used for past deductions in cases such as this as current income under the tax benefit rule. These courts assume that past tax benefits and future tax consequences of recovery would thus automatically cancel each other out. *See Burgess v. Premier Corp.,* 727 F.2d 826, 838 (9th Cir.1984); *Western Federal Corp. v. Davis,* 553 F.Supp. 818, 820 (D.Ariz.1982). The cases taking this position fail to recognize that the tax benefit rule achieves only a rough facsimile of the actual financial effects of deductions disallowed in subsequent years. The findings in the Reardon report in the instant case, stipulated to by the parties, reflect the fallacy in placing total reliance on the tax benefit rule to correctly wash out tax consequences when illegally induced or procured investments are later recovered by the investor. The report also shows that parties are capable of producing evidence of both past tax benefits and future tax consequences in claiming damages or seeking mitigation. When such evidence is presented, we see no reason to ignore it merely because of the complexity of the matter or the unpredictability of the IRS in seeking the government's share of a judicial recovery.

■ Under the Minnesota Blue Sky Act, however, we cannot find that the district court in this case erred in not adjusting the plaintiffs' restitutionary recovery based on all past and future tax aspects of their investments and subsequent rescission. In an action for rescission and restitution based on the nonregistration of securities in Minnesota, the statute clearly provides that "the purchaser shall be entitled to recover the consideration paid for the security together with interest at the legal rate, costs, and reasonable attorney's fees, less the amount of any income received on the securities." Minn.Stat.Ann. § 80A.23(1) (West Supp.1984). The district

court held strictly to this definition of proper statutory restitution. Even if its holding does not return the plaintiffs precisely to the status quo *ante* because of the failure to consider tax consequences, we defer to the district court's literal construction of the term "income" in the state statute to cover benefits received from the defendants, *e.g.*, production checks, but not the financial benefits or consequences of federal and state tax laws. *But cf. Austin v. Loftsgaarden, supra*, 675 F.2d at 181 (implicitly construing the "income" language in a federal securities statute to include tax considerations).

## III. CONCLUSION.

This case is not simple on the facts or the law. The defendants unquestionably violated the Minnesota Blue Sky Act by selling unregistered securities to or through Minnesota residents. The securities laws are designed to protect the public and to deter such conduct. Thus, equitable defenses which are normally available to defendants are limited to more egregious plaintiff conduct.

On the record before us, the equitable defense of *in pari delicto* may be available against some of the plaintiffs who promoted the defendants' investments with at least an equal degree of culpability with regard to the nonregistration issue. In addition, the claims of some plaintiffs based on transactions which were completed more than three years before the commencement of these actions or which were insufficiently connected with the State of Minnesota cannot support the plaintiffs' recovery for nonregistration. On remand, the district court shall dismiss any individual claims which are barred by any of these available defenses as a matter of law, conduct further proceedings to resolve any factual questions which remain as to other claims which might be subject to these defenses, and modify its summary judgment order to award restitution only to those plaintiffs whose claims are not or

may not be foreclosed by one of these defenses.

The parties shall bear their own costs.

Affirmed in part; reversed in part; and remanded.

---

LAY, Chief Judge, concurring.

Although I concur in the majority's result, I cannot agree with the reasoning behind this court's exclusion of the tax consequences of plaintiffs' investments in determining the measure of recovery. I would affirm the district court's refusal to consider past tax benefits realized by plaintiffs, but solely on the ground that *Austin v. Loftsgaarden*, 675 F.2d 168 (8th Cir. 1982), was wrongly decided.

In endorsing *Austin* and affirming the district court, the majority attempts to distinguish between the Securities Act of 1933 § 12, 15 U.S.C. § 77*l* (1982), and a section of the Minnesota Blue Sky Act, Minn.Stat. Ann. § 80A.23(1) (West Supp.1984). Both Acts contain identical language in relevant part allowing restitutionary recovery of: "consideration paid * * * less the amount of any income received * * *." *Id.* By attempting to distinguish between the meaning of the two Securities Acts, there could be noticeable confusion, particularly in those cases seeking alternative recovery under both federal and state law. Ironically, the majority fails to notice that in interpreting section 77*l* of the federal Securities Act the *Austin* court relied upon Minnesota law and cited the Minnesota statute now said to be distinguishable.

I would overrule *Austin*. Restitutionary or rescissionary damages seek to return the parties to the status quo. This can be achieved only where the wrongdoer is required to disgorge all consideration received. In *Austin* the defendant was found guilty of fraud. Such a wrongdoer should not be allowed to benefit from the "collateral source" of an individual's tax benefits. As Justice Blackmun stated in his dissenting opinion in *Norfolk & West-*

*ern Ry. Co. v. Liepelt,* 444 U.S. 490, 498–99, 100 S.Ct. 755, 759–60, 62 L.Ed.2d 689 (1980) (Blackmun, J., dissenting): "In my view, by mandating an adjustment of the award by way of reduction for federal income taxes \* \* \* the [c]ourt appropriates for the tortfeasor a benefit \* \* \*." This concern is even more paramount in a suit involving rescissionary damage. The taxpayer receives no unjust enrichment, for any tax benefit that he or she gained will be accounted for as recaptured depreciation under the Internal Revenue Code. This accounting, however, is between the government and the taxpayer; the defendant should receive no gain from the possible tax consequences resulting from the plaintiff's recovery.

I am confident the rule in *Austin* will create greater complications for litigants in actions seeking restitutionary damages. The Court in *Norfolk & Western Ry. Co. v. Liepelt,* 444 U.S. 490, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980), intended to limit the inclusion of tax consequences in determining the amount of plaintiff's recovery to cases involving a lost earnings claim. To open the door beyond the limited holding in *Norfolk & Western Ry. Co.* turns the rule of rescissionary damages on its head. I would therefore affirm the district court, not on a meaningless distinction between Minnesota and federal law, but on the fundamental basis that tax law governing tax shelters is irrelevant to recoupment and restitutionary damages.