CAN-AM PETROLEUM COMPANY, a Colorado corporation, Harold D. Beckwith, and Charles Laird, Appellants,

v.

Ramona BECK, Rita Stark, Mr. James Meyers, Mrs. James Meyers, and William Halpern, Appellees.

No. 7383.

United States Court of Appeals Tenth Circuit.

May 4, 1964.

Robert Martin, Wichita, Kan. (George B. Collins, Oliver H. Hughes, K. W. Pringle, Jr., W. F. Schell, Thomas M. Burns, Laverne Morin, Robert M. Collins and William L. Oliver, Jr., Wichita, Kan., were with him on the brief), for appellants.

James W. Sargent and Bruce W. Zuercher, Wichita, Kan. (Emmet A. Blaes, Roetzel Jochems, Robert G. Braden, J. Francis Hesse, Stanley E. Wisdom, Cecil E. Merkel, Harry L. Hobson, L. D. Klenda, Charles M. Cline and Richard A. Loyd, Wichita, Kan., were with them on the brief), for appellees.

Before MURRAH, Chief Judge, and PICKETT and LEWIS, Circuit Judges.

LEWIS, Circuit Judge.

Appellees as plaintiffs below initiated this action under the Federal Securities Act of 1933, 15 U.S.C. § 77a et seq., to recoup monies paid to the corporate defendant for undivided interests in oil and gas leases. The individual defendants are managing officers of Can-Am Petroleum Company. The trial court, concluding that the evidence supported plaintiffs' claim that the securities were sold in violation of sections 77e and 77l of the Act,[1] entered judgment for plaintiffs according to their several interests and added a joint award for costs and attorneys' fees under section 77k. Defendants now submit to the principal judgment as it affects all plaintiffs except Ramona Beck but attack the award of costs and attorneys' fees in its entirety. In regard to Ramona Beck the evidence clearly shows, so say appellants, that Mrs. Beck was *in pari delicto* with the corporation and its officers and thus, under equitable principles, cannot avail herself of the shelter of the Securities Act; and further, that she was an underwriter as that term is defined in subsection 77b(11) of the Act and thus not entitled to the remedial provisions of the Act. We affirm the principal judgment but remand the case to the trial court for further consideration in regard to costs and attorneys' fees.

In 1959, the defendant corporation Can-Am was an independent oil and gas exploration and production company with offices in Denver, Colorado, and Wichita, Kansas. Included in the company's holdings was an oil and gas lease on 45 acres of land in Hart County, Kentucky, which the company was anxious to drill and develop. To obtain the necessary capital, set at $50,000.00, Can-Am sent Marvin Beckwith (an original defendant) to Phoenix, Arizona, to promote the sale of

---

1. It is not now disputed that the securities were misrepresented and were un-registered though required to be registered under the Act.

undivided interests in the leasehold for such development needs and clear a carried interest for Can-Am. At Phoenix, Beckwith made a "cold" contact with Mrs. Beck, a business woman of some means but no experience in or knowledge of the oil and gas business. Mrs. Beck evinced an immediate interest in the venture that, between March and September, resulted in many and varied activities upon her part which could be described as both legally reckless and naive.

By September, Mrs. Beck had purchased and paid for an $^{11}\!/\!_{32}$ undivided interest in the leasehold, for herself, and at a cost of $27,187.00; she had enthusiastically and successfully urged others to purchase interests and had worked closely with Beckwith in his promotional efforts; she had received from Can-Am, by agreement, an additional $^{1}\!/\!_{16}$ undivided interest for her efforts to further the promotion; and she had tried, unsuccessfully, to dispose of the interests of both Can-Am and herself at a quick and substantial markup. In regard to her activities which extend beyond her personal investment we find substantial support in the record for both the extent and limitation contained in the trial court's finding that:

"4. The plaintiff, Ramona Beck, was associated with the defendants in the sale of these securities to other persons and actively participated in efforts to sell the securities of the defendants to other persons in an effort to forward their interest as well as hers. For this she was paid a $^{1}\!/\!_{16}$ working interest by the defendants."

Although the law is sometimes impatient with claims by parties to illegal contract when made against each other it will always examine with care the total circumstances of the parties' association and particularly so when the public interest is involved in the enforcement of a statutory remedy. Here the claim is based upon the provisions of the Securities Act, the remedial aspects of which cannot be waived either directly or indirectly. 15 U.S.C. § 77n;

Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168. The purpose of the Act is to protect the naive or uninformed investor and to deny recourse to the reckless or fraudulent seller of securities. And thus, when the relationship of the parties is mixed, the judicial inquiry will concern itself with essentials in interpreting and enforcing the provisions of the Act. One who sells securities in violation of the Act will find no comfort in his own incidental investment when he seeks recovery against his equally culpable associates. Athas v. Day, D. Colo., 186 F.Supp. 385. But an investor does not waive or lose the shelter of the Act because he becomes to some extent involved in the illegality of the security sales. The reason for such rule has been aptly stated:

"In such event, since the policy of the law designed to discourage illegal agreements comes in conflict with that policy which demands the effective enforcement of the Corporate Securities Act, the law differentiates the guilt of the parties, because refusal of relief to the less culpable would involve harmful effects wholly out of proportion to the requirements of individual punishment or the discouragement of illegal contracts. Williston on Contracts, 1938 Ed., vol. VI, pp. 5085, 5086, § 1789." Miller v. California Roofing Company, 55 Cal.App.2d 136, 130 P.2d 740, 745.

So viewed, the principal judgment entered by the trial court is not in error. Mrs. Beck was sought out as a potential investor and aid to Can-Am's plan to raise capital in violation of the Act. She became "sold" upon the merits of the investment through the company's misrepresentations and was persuaded to buy $^{11}\!/\!_{32}$ of the securities. Of the fifty-thousand-dollar goal set by Can-Am, Mrs. Beck contributed over $27,000.00 as an investor. Her relationship as a pure investor became adulterated when she actively assisted in selling others but she at no time had the degree of culpability attributed to defendants

**374**

and should not be considered as *in pari delicto*.

█ Defendants' contention that Mrs. Beck's activities were such as to constitute her an underwriter [2] is negatived by the facts as found by the trial court and which are not clearly erroneous. The court found that Mrs. Beck's "services were obtained and her money procured by the defendants' failure to disclose to her and other plaintiffs the facts with respect to the [securities] * * * and defendants' failure to exercise reasonable care to furnish to her and the other plaintiffs the material fact which would have affected her investment and participation with defendants in the [securities] * * *." Again, the court, in furthering the general purpose of the Securities Act, was warranted in considering the relationship of Mrs. Beck and the defendants from its over-all aspects rather than its incidentals. Her isolated endeavor to join with Can-Am in disposing of their entire interests did not change her relationship from that of investor to underwriter.

█ In awarding plaintiffs judgment for costs and attorneys' fees the trial court determined the itemized costs to be $3,721.08 and the sum of $6,000.00 to be reasonable attorneys' fees for all plaintiffs combined. Such an award is sustainable only "if the court believes the suit or the defense to have been without merit * * *." 15 U.S.C. § 77k(e). The court below made no finding that the defense was without merit. Since an unsuccessful defense is not necessarily without merit and, indeed, the term implies a defense bordering on frivolity, we must remand this aspect of the case for further consideration and a specific

finding. Compare Stadia Oil & Uranium Co. v. Wheelis, 10 Cir., 251 F.2d 269.

The case is remanded for further consideration in regard to costs and attorneys' fees and the judgment is otherwise affirmed.

2. 15 U.S.C. § 77b(11). "The term 'underwriter' means any person who has purchased from an issuer with a view to, or offers or sells for an issuer in connection with, the distribution of any security, or participates or has a direct or indirect participation in any such undertaking, or participates or has a participation in the direct or indirect underwriting of any such undertaking; but such term shall not include a person whose interest is limited to a commission from an underwriter or dealer not in excess of the usual and customary distributors' or sellers' commission. As used in this paragraph the term 'issuer' shall include, in addition to an issuer, any person directly or indirectly controlling or controlled by the issuer, or any person under direct or indirect common control with the issuer."