615 F.Supp. 1217 (1985)
MONETARY MANAGEMENT GROUP OF ST. LOUIS, INC., Plaintiff,
v.
KIDDER, PEABODY & CO., INC., and William R. Martin, Defendants.
No. 84-558C(1).
United States District Court, E.D. Missouri, E.D.
August 16, 1985.
*1218 *1219 Ellen E. Bonacorsi, St. Louis, Mo., for plaintiff.
Jim J. Shoemake, Michael A. Fisher, F. Vincent Vatterott, St. Louis, Mo., for defendants.

MEMORANDUM
NANGLE, Chief Judge.
This case arises out of plaintiff's purchase of two (2) sets of bonds from defendants. Plaintiff alleges that defendants agreed to provide "marginable" bonds and that the two (2) sets of bonds actually purchased were not marginable in accordance with Federal Reserve Regulation T, 12 C.F.R. § 220.2(i)(1)(i). Plaintiff's complaint asserts three (3) counts and seeks rescission of the bond transactions in question. Count I alleges a violation of § 12(2) of the Securities Act of 1933, 15 U.S.C. § 77l(2). Counts II and III are pendent state law claims alleging a violation of § 409.411(a)(2) of the Missouri Securities Act, 409.411(a)(2) Mo.Rev.Stat. (1980), and common law misrepresentation, respectively. Plaintiff seeks rescission of the transaction, refund of the purchase price, prejudgment interest, recovery of interest paid to defendants, reasonable attorney's fees, interest thereon and costs.
This case was tried to this Court sitting without a jury. This Court having considered the pleadings, the testimony of the witnesses, the documents in evidence, and the stipulations of the parties, and being fully advised in the premises, hereby makes the following findings of fact and conclusions of law, as required by Rule 52 of the Federal Rules of Civil Procedure. Fed.R.Civ.P. 52.

A. FINDINGS OF FACT
1. Plaintiff Monetary Management Group of St. Louis, Inc. (hereinafter "MMG"), is a Missouri corporation with its principal place of business in St. Louis County, Missouri.
2. Defendant Kidder, Peabody & Co., Inc. (hereinafter "Kidder, Peabody"), is a Delaware corporation with its principal place of business in New York, New York. Kidder, Peabody has a branch office located within this District in Clayton, Missouri.
3. Defendant William R. Martin (hereinafter "Martin"), is a citizen of the State of Missouri domiciled in St. Louis County, Missouri. At all times relevant herein, Martin was a duly licensed and registered representative employed by Kidder, Peabody, acting within the course and scope of his employment.
4. MMG is in the business of offering financial planning services for corporations and corporate executives. MMG often acts as an investment agent for its clients and invests the funds of said clients.
5. In the spring of 1983, MMG acquired Basler Electric Company, Inc. (hereinafter "Basler"), as a client. Pursuant to an agreement, MMG did financial planning and invested corporate funds for Basler. With respect to the investment of Basler's corporate funds, MMG opened three (3) separate accounts for Basler: 1) an equity account; 2) a capital preservation account; and 3) a leveraged bond account. The leveraged bond account is the account relevant herein. In this account, MMG sought to purchase discounted bonds on margin, or on credit, to obtain a high after-tax rate of return if held to maturity. Federal securities regulations establish limits on the types of bonds that may be margined. Federal Reserve Regulation T, 12 C.F.R. § 220.2(a)(1)(i), requires, inter alia, that an over-the-counter bond have a principal amount outstanding of not less than $25,000,000.00 to be marginable.
6. In or around April, 1983, Martin contacted Ray C. Hayes, former portfolio manager of MMG, at MMG by telephone in an attempt to solicit business. Mr. Hayes of MMG specifically instructed Kidder, Peabody, through its agent, Martin, that MMG was interested only in purchasing bonds for use in a leveraged bond account, said bonds to possess particular price, maturity, yield and marginability characteristics. As *1220 a result of the discussions between Martin and Mr. Hayes, on or about May 11, 1983, Kidder, Peabody and MMG entered into a "Customer's Agreement". On the same date, MMG opened and thereafter maintained a margin account at the branch office of Kidder, Peabody in Clayton, Missouri, on behalf of MMG's customer, Basler, for whom MMG acted as agent and with whom MMG had entered into an investment management contract. Martin was the registered representative who handled MMG's leveraged bond account at Kidder, Peabody. Mr. Hayes was the only person at MMG with whom Martin communicated or otherwise dealt in connection with MMG's leveraged bond account at Kidder, Peabody.
7. In May, 1983, Kidder, Peabody, through its agent, Martin, recommended that MMG purchase Puget Sound Power and Light Co. bonds (Feb. 1991, 4 5/8 ) and Utah Power and Light Co. bonds (Apr. 1993, 4½) for its leveraged bond account. On May 17, 1983, Kidder, Peabody, through its agent, Martin, effected the purchase of $125,000.00 face value of Utah Power and Light Co. bonds for MMG, and on May 19, 1983, Kidder, Peabody, through its agent, Martin, effected the purchase of $75,000.00 face value of Puget Sound Power and Light Co. bonds for MMG. Kidder, Peabody acted as principal when it sold the Puget Sound Power and Light Co. bonds and Utah Power and Light Co. bonds to MMG. The purchase prices reflected on the sales tickets of the bonds were $83,196.88 for the Utah Power and Light Co. bonds and $53,748.49 for the Puget Sound Power and Light Co. bonds.
8. MMG relied upon the representation of Kidder, Peabody and the knowledge and expertise of its registered representative, Martin, in making trades in the bond market.
9. Kidder, Peabody and Martin sold the Utah Power and Light Co. bonds and the Puget Sound Power and Light Co. bonds to MMG through means and instruments of transportation and communication in interstate commerce, including, but not limited to, the use of the telephone.
10. Prior to the purchase of the Utah Power and Light Co. bonds and the Puget Sound Power and Light Co. bonds, Kidder, Peabody, through its agent, Martin, represented to MMG that said bonds met all of MMG's specifications, including marginability. Mr. Hayes of MMG believed, at the time of the purchase of said bonds, that said bonds were marginable.
11. Kidder, Peabody margined the Utah Power and Light Co. bonds and the Puget Sound Power and Light Co. bonds by requiring MMG to pay 30% of the purchase price of said bonds and loaning the balance of said purchase price to MMG by debiting MMG's margin account.
12. At the time of the purchase of the bonds in question, both the Utah Power and Light Co. bonds and the Puget Sound Power and Light Co. bonds had only $15,000,000.00 in principal amount outstanding. Thus, the bonds in question were not marginable under Federal Reserve Regulation T at the time of the sale and extension of credit to MMG.
13. On September 16, 1983, MMG informed Kidder, Peabody that plaintiff desired to close its account with Kidder, Peabody. In October, 1983, MMG closed its account with Kidder, Peabody. Pursuant to MMG's request, MMG's leveraged bond account at Kidder, Peabody was transferred to A.G. Edwards and Sons, Inc., another brokerage firm with an office in St. Louis. At that time, A.G. Edwards and Sons, Inc. refused to margin the Utah Power and Light Co. bonds and Puget Sound Power and Light Co. bonds because said bonds were not marginable under Federal Reserve Regulation T. The debit balance in MMG's margin account at Kidder, Peabody was paid off at the time the account was transferred to A.G. Edwards and Sons, Inc. The bonds in question have been held at all times since October, 1983, in a cash account for MMG at A.G. Edwards and Sons, Inc., in street name, and said bonds have not been sold and their status has not otherwise changed since the time of transfer.
*1221 14. Prior to October, 1983, neither MMG nor Kidder, Peabody or Martin knew that the bonds in question were not marginable.
15. In October, 1983, Mr. Hayes of MMG contacted Kidder, Peabody, through its agent and employee Martin. Mr. Hayes informed Martin that A.G. Edwards and Sons, Inc. would not margin the bonds and requested that the trades in question be reversed. Kidder, Peabody and Martin refused to reverse the trades at that time. Through counsel, on November 23, 1983, MMG again requested that Kidder, Peabody reverse the trades, but Kidder, Peabody refused and has continued to refuse to do so. This action was filed in March, 1984.
16. Margin interest attributable to the Puget Sound Power and Light Co. bonds and the Utah Power and Light Co. bonds in the amount of $4,858.78 was charged to MMG's margin account at Kidder, Peabody from May through October of 1983. MMG used Basler's funds to purchase the bonds in question and to pay the margin interest charged by Kidder, Peabody. The income earned from the bonds in question was paid to Basler, but the precise amount of said income was not proven at trial. The event which precipitated the transfer of the bonds in question from Kidder, Peabody to A.G. Edwards and Sons, Inc. was Basler's closing of its account with MMG. At the present time, Basler's account with MMG is closed, with the exception of the bonds in question. Basler has released any claims it may have against plaintiff. Although Basler is not a party to this lawsuit and Basler has not assigned any claims it may have against defendants to MMG, Basler consented to and approved of MMG's institution of the instant action and MMG's efforts to have the bond trades rescinded. Basler is looking to MMG to resolve the situation and MMG has authority to tender the bonds in question back to Kidder, Peabody. MMG has, in fact, offered to tender said bonds to Kidder, Peabody and Martin.
17. At the time that Martin recommended the bonds in question to Mr. Hayes, Martin believed that said bonds were marginable. Martin's belief was based on the advice of Kidder, Peabody's New York margin department that said bonds were marginable. However, Martin made no independent investigation of said bonds' margin ability. Nevertheless, both Martin and Kidder, Peabody's New York margin department employees had available to them current Standard & Poor's bond guides. Said guides, if consulted, would have indicated to both Martin and Kidder, Peabody's New York margin department employees that the bonds in question were not marginable.
18. MMG has incurred actual attorney's fees in the amount of $53,951.50 through March 18, 1985, in prosecuting its claims against defendants.

CONCLUSIONS OF LAW
This Court has subject matter jurisdiction over plaintiff's claims pursuant to 15 U.S.C. § 77v(a), 28 U.S.C. § 1331, and the doctrine of pendent jurisdiction. Venue in this District is proper pursuant to 15 U.S.C. § 77v(a) and 28 U.S.C. § 1391(b), because the sales of the securities at issue herein took place in this District and both defendants are found, reside and/or transact business in this District.

1. Liability
MMG's federal claim in Count I is brought under § 12(2) of the Securities Act of 1933, 15 U.S.C. § 77l(2), and its state law claims in Counts II and III are brought under Mo.Rev.Stat. § 409.411(a) (1980) and the common law of negligent misrepresentation, respectively.[1] To prevail on its § 12(2) claim in Count I, plaintiff must prove the following elements:

*1222 1) Defendants offered or sold a security;
2) By the use of any means of communication in interstate commerce;
3) Through a prospectus or oral communication;
4) By making a false or misleading statement of a material fact or by omitting to state a material fact necessary in order to make the statements, in light of the circumstances under which they were made, not misleading;
5) Plaintiff did not know of the untruth or omission; and
6) Defendants knew, or in the exercise of reasonable care, could have known of the untruth or omission.
Alton Box Board Co. v. Goldman, Sachs and Co., 560 F.2d 916 (8th Cir.1977); Gridley v. Sayre & Fisher Co., 409 F.Supp. 1266 (D.S.D.1976). The elements of plaintiff's claim in Count II are essentially identical to those of plaintiff's federal securities claim in Count I. See Dunn v. Bemor Petroleum, Inc., 680 S.W.2d 304, 306-07 (Mo.Ct.App.1984). In addition, the elements of plaintiff's claim in Count III of its complaint are arguably encompassed by those in Counts I and II. See Hudspeth v. Zorn, 292 S.W.2d 271 (Mo.1956); Osterberger v. Hites Construction Co., 599 S.W.2d 221 (Mo.Ct.App.1980).
As discussed in a prior Memorandum, defendants do not seriously contend that elements 1, 2, 3 and 5 are not established in the case at bar. Defendants offered or sold a security. See Findings of Fact No. 7. Said offer and sale was made by means of communication in interstate commerce. See Findings of Fact No. 9. Said offer and sale was made through oral communication. See Findings of Fact Nos. 7 and 10. In addition, plaintiff did not know that the bonds in question were not marginable. See Findings of Fact No. 14.
In this Court's March 18, 1985, Order and Memorandum, this Court denied plaintiff's motion for summary judgment for the reason that issues of fact seemed to exist with respect to elements 4 and 6. Having given all parties every reasonable opportunity to fully develop the record in this case, it is now clear that plaintiff established both of these remaining elements. Defendants did not even address element 6 in their post-trial memorandum. This Court concludes that defendants could have known that the bonds in question were not marginable if they had exercised reasonable care in determining the marginability of said bonds. See Findings of Fact No. 18. If Kidder, Peabody's employees or Martin had consulted their readily available Standard & Poor's bond guides, they would have known that the bonds in question were not marginable. Id.
Defendants do address element 4 in their post-trial memorandum. Defendants falsely represented that the bonds in question were marginable, see Findings of Fact No. 10, but they argue that their misstatement was not "material" within the meaning of § 12(2) of the Securities Act of 1933. The materiality requirement in § 12(2) of the Securities Act of 1933 must be judged by an objective standard. The standard is whether, taking into consideration the surrounding circumstances, there is a substantial likelihood that a reasonable investor would attach importance to the alleged misrepresentations or omissions. Austin v. Loftsgaarden, 675 F.2d 168, 176 (8th Cir. 1982); In re Home-Stake Production Co. Securities Litigation, 76 F.R.D. 351, 372 (N.D.Okla.1977).
In light of the circumstances surrounding the purchase and sale of the bonds in question, there is more than a substantial likelihood that a reasonable investor would attach importance to the marginability of said bonds. The bonds in question were purchased specifically for a leveraged bond account according to a strict set of criteria that was communicated to defendants. See Findings of Fact No. 6. Because of the investment strategy underlying the account in question, marginability was an essential attribute of the bonds to be purchased for said account. See Findings of Fact No. 5. Defendants' arguments that margining is a "service performed by a broker" and that there is no private right of action for violation of Federal Reserve Regulation T are to no *1223 avail. Margining may be a service, but marginability was as important an attribute of the bonds in question as their price or interest yield. It is also irrelevant that Kidder, Peabody in fact margined the bonds in question for the short period of time during which MMG maintained an account with Kidder, Peabody. See Findings of Fact No. 11. Plaintiff purchased these bonds on behalf of its client as an investment on credit. Regardless of the fact that Kidder, Peabody in fact margined these bonds for several months, the bonds are now essentially useless to plaintiff or its client as an investment on credit. Further, this Court's conclusion that marginability was material in the circumstances of this case does not amount to creating a private cause of action for violation of Federal Reserve Regulation T. As discussed in an earlier Memorandum by this Court, plaintiff's claim is not that Federal Reserve Regulation T was violated, but that defendants falsely represented to plaintiff that the bonds in question were marginable in accordance with Federal Reserve Regulation T.
Accordingly, this Court concludes that plaintiff established all the elements of a § 12(2) violation. It follows that plaintiff also carried its burden of proof on Counts II and III. Plaintiff is entitled to a judgment in its favor on all three counts finding defendants liable to plaintiff.

2. Relief
The relief sought by plaintiff is rescission of the sales of the bonds in question, recovery of the purchase prices, prejudgment interest on the purchase prices, recovery of interest charges associated with the bonds in question, attorney's fees, interest thereon and its costs. The question of attorney's fees is considered in the next section.
In the opinion of this Court, plaintiff is entitled to rescission of the sales of the bonds in question. The reasons for this opinion were stated in this Court's Order and Memorandum of March 18, 1985, and need not be repeated here. However, it bears noting that the evidence at trial clearly established that, aside from the question of title, plaintiff is in a position to effectuate the tender of the bonds in question. See Findings of Fact No. 17. Defendants must return the purchase price of said bonds to plaintiff upon plaintiff's tender of said bonds. Plaintiff is also entitled to prejudgment interest at the applicable annual rate on the amount of the purchase prices, because the amount due plaintiff is a liquidated amount. Bank of Mulberry v. Firemen's Fund Insurance Company, 720 F.2d 501, 503-04 (8th Cir.1983). In addition, § 12(2) expressly provides for the recovery of interest on the amount of the consideration paid. 15 U.S.C. § 77l(2). Defendants object to plaintiff's request for return of the interest charges associated with the bonds in question. Defendants' objection is well-taken. The interest charges in question were incurred by MMG, because Kidder, Peabody in fact margined the bonds in question. During the period of time that MMG had an account with Kidder, Peabody, MMG received exactly what it bargained for, namely, marginable bonds or an investment on credit. In this regard, Kidder, Peabody and Martin did not make any misrepresentations with respect to what MMG was receiving for its interest payments. Plaintiff is entitled to interest on the amount of the judgment entered herein this day and its costs. Plaintiff shall file an appropriate bill of costs to determine the amount of costs that is taxable to defendants. In addition, defendants are entitled to an offset for the amount of income received by MMG or Basler from the bonds in question. Defendants did not prove with specificity the amount of said income, but MMG is in a position to determine said amount and provide defendants with said information. Mo.Rev.Stat. § 409.411(a) (1980) expressly provides, inter alia, for the return of any income received on the security. MMG's communication of said amount to defendants is a condition precedent to defendants' duty to refund the net purchase prices.
In sum, upon plaintiff's tender of the bonds in question to defendants, MMG is entitled to rescission of the sale of said bonds, recovery of the full purchase prices *1224 paid therefor, prejudgment interest on the full purchase prices at the applicable rate, together with interest thereon and its costs. Plaintiff is not entitled to recovery of the interest charges associated with the bonds and debited to MMG's account. Defendants are entitled to an offset for the amount of income received by MMG's client, Basler, and plaintiff must determine and provide defendants with said amount.

3. Attorney's Fees

a. Right To An Award Of Fees
MMG rests its claim for an award of attorney's fees on two (2) independent grounds. First, MMG relies on § 11(e) of the Securities Act of 1933, 15 U.S.C. § 77k(e), which provides for a discretionary award of attorney's fees to a prevailing plaintiff in a suit brought under the Securities Act if the court determines that the defense advanced was frivolous, without merit, or brought in bad faith. Junker v. Crory, 650 F.2d 1349 (5th Cir.1981); Aid Auto Stores, Inc. v. Cannon, 525 F.2d 468 (2d Cir.1975); Can-Am. Petroleum Co. v. Beck, 331 F.2d 371 (10th Cir.1964). The statute uses the phrase "without merit" and this phrase has been interpreted to require a defense bordering on frivolity. Can-Am. Petroleum Co., 331 F.2d at 374. In the opinion of this Court, MMG is not entitled to an award of attorney's fees under § 11(e) of the Securities Act of 1933. While defendants' defenses were ultimately unsuccessful, this Court is not convinced that they bordered on frivolity or were asserted in bad faith.
The second bases is § 409.411(a)(2) of the Missouri Securities Act, Mo.Rev. Stat. § 409.411(a)(2) (1980), which expressly provides for an award of "reasonable attorney's fees" to a prevailing plaintiff thereunder. Because this Court has held that plaintiff is entitled to relief under each of the three (3) counts asserted by it, including its Missouri Securities count, MMG is entitled to an award of fees under § 409.411(a)(2).

b. Amount Of Award
MMG seeks an award in the amount of $53,951.50 plus the fees incurred by it during the post-trial period. In the opinion of this Court, MMG's requests for an award of attorney's fees was the sole reason that this case was tried and not amicably settled. Although the evidence was not entirely clear as to the current market value of the bonds in question, it was not seriously disputed that the difference between the purchase price of the bonds in question and their market value was and is approximately $8,500.00. Accordingly, if defendants had taken the bonds back, returned the amount of the purchase price to plaintiff, and sold the bonds on the market, defendants would have been out a net amount of $8,500.00. However, this point cuts two ways. MMG could also have sold the bonds on the open market and sued defendants for damages in the amount of $8,500.00. Thus, this Court is faced with a request for more than $53,000.00 in attorney's fees in a case where the net financial risk was approximately $8,500.00.
At first blush, the disparity between the "value" of this case and the amount of fees requested is shocking and appears to be unconscionable. A closer look at this case only serves to confirm this reaction.
The two primary components in assessing the reasonableness of a request for an award of attorney's fees are the number of hours spent working on the case and the rates at which said time was charged. In the case at bar, there is little question that the rates charged by plaintiff's counsel were reasonable. These rates ranged from $45.00 per hour to $130.00 per hour. This Court is convinced that given the level of experience and skill of the various persons who worked on this case on behalf of plaintiff, said rates were reasonable. Moreover, Kidder, Peabody does not question the reasonableness of said rates. However, it is the number of hours for which plaintiff seeks compensation that both this Court and Kidder, Peabody object to as unreasonable.
Unreasonably large amounts of time were spent on various aspects of this case. This is true, even though plaintiff's counsel has always represented to this *1225 Court that this was a painfully simple case. For example, before defendants had even filed their motion to dismiss plaintiff's complaint, plaintiff's counsel had spent 77.4 hours on this case at a cost of $6,012.86. With respect to answering defendants' motion to dismiss, a motion plaintiff's counsel characterizes as "frivolous", plaintiff's counsel spent 22 hours at a cost of $1,568.08. The period from June, 1984, through the end of October, 1984, was the period during which the parties attempted to engage in discovery. This primarily consisted of both parties exchanging written discovery materials and objecting to same. During this period, plaintiff's counsel spent 75.6 hours at a cost of $6,022.77. During the month of November, 1984 alone, plaintiff's counsel spent 328.1 hours at a cost of $21,792.62. The activities during this month consisted of additional written discovery, filing a motion to compel and opposing defendants' motion to compel, trial preparation and taking six (6) short depositions. From December, 1984 through March 18, 1984, the date the trial of this action began, plaintiff's counsel spent 302.3 hours at a cost of $22,544.59. The primary activity during this period consisted of preparing a tardy motion for summary judgment, battling over the deposition of Basler's Ray Vollett, and preparing for trial. In the opinion of this Court, these figures are unreasonable and a reduced award is appropriate.
Much of the discovery dispute which occurred in November, 1984, centered around obtaining facts concerning the present ownership of the bonds in question. Plaintiff's counsel vigorously opposed said discovery and continued to obfuscate that question at every stage of the proceedings. Indeed, at the trial itself, plaintiff still did not willingly present a clear picture of the current status of the ownership of the bonds. The time spent on research in this case appears to be greatly disproportionate to the number and complexity of the legal issues raised herein. Moreover, having spent a great deal of time presiding over the numerous small battles that broke out in this case, this Court is left with the firm impression that the excessive number of hours spent on this case is due in large part to the belligerent and combative attitude of plaintiff's counsel. This is not to say that defendants' counsel was any more cooperative or intent upon efficiently resolving this case. Nevertheless, this Court is convinced that plaintiff's counsel's approach to the prosecution of this case was clearly inefficient. This is especially true given the small monetary amount at risk. In addition, this Court agrees with Kidder, Peabody's argument that MMG repeatedly hampered defendants in their efforts to depose Basler Electric Company. The positions taken by plaintiff, especially its extremely narrow view of relevance in this case, are especially unreasonable in view of the fact that plaintiff had little to gain by opposing discovery on said question and very little to lose by defendants gaining information on said question.
The real losers in this case are not the defendants, but the public which must bear the cost of providing the resources to maintain and operate the forum in which the parties attempted to resolve this dispute. In a recent speech at the Annual Meeting of the American Law Institute, Chief Justice Warren Burger pointed out that "a federal district court costs approximately $565 per hour to operate during a trial." 53 U.S.L.W. 2582. In view of the lack of complexity of the issues in this case and the unreasonableness of the hours expended on this case by plaintiff's counsel, a reduction of plaintiff's request for an award of fees is warranted. In the opinion of this Court, plaintiff's fee request should be and is reduced by 40%. Plaintiffs' total fee request presently before this Court is approximately $55,000.00. When reduced by 40%, plaintiff is entitled to an award of $33,000.00.
NOTES
[1] Defendants previously objected to plaintiff's standing or real party in interest status to prosecute this action. Defendants raised this issue again in their proposed conclusions of law. This Court previously rejected defendants' position in an Order and Memorandum dated March 18, 1985. The evidence admitted at the trial of this action did not alter the correctness of this Court's holding that MMG is a proper plaintiff. Accordingly, that issue will not be considered herein.